IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
FLORENCE DIVISION
Case Number: 4:21-cv-00815

| | |
|---|---|
| BRAD R. JOHNSON, | |
| Plaintiff, | |
| v. | **MOTION TO DISMISS PURSUANT TO RULE 12(B)(1), 12(B)(2), AND 12(B)(6)** |
| PENNYMAC LOAN SERVICES, LLC, STANDARD GUARANTY INSURANCE COMPANY, AND ASSURANT, INC. | |
| Defendants. | |

This Court should dismiss all claims in this case against Defendant PennyMac Loan Services, LLC ("PennyMac") because personal jurisdiction does not exist over PennyMac with respect to these claims in the State of South Carolina. Plaintiff Brad Johnson attempts to bring various claims against PennyMac arising from a residential loan secured by property located in the State of North Carolina. PennyMac is a California-based company, and it has no offices within the State of South Carolina. According to Johnson, however, personal jurisdiction exists over PennyMac in this Court because Johnson lives in South Carolina, he called PennyMac on the telephone from South Carolina, he opened emails in South Carolina that were sent to him from PennyMac, and the bank account from which his loan payments are made is located in South Carolina. Case law, however, confirms that these alleged contacts with South Carolina are insufficient to subject PennyMac to jurisdiction in South Carolina because all of these contacts with South Carolina were driven by Johnson, not PennyMac.

To the extent that this Court finds, however, that it has jurisdiction over PennyMac, this Court should abstain from hearing this case. This case presents a classic example of when a federal

1

court should abstain from exercising jurisdiction over an action.  Through his complaint, the Plaintiff asks this Court to opine on issues currently pending in the state courts of North Carolina, including issues implicated by North Carolina's regulation of property located within that state. As a result, the Court should abstain from hearing this case pursuant to *Colorado River* and *Younger* abstention doctrines.

Moreover, even if the Court declines to abstain, the relief the Plaintiff seeks finds no precedent in jurisprudence nationally.  Plaintiff essentially argues that the placement of lender-placed homeowners insurance amounts to a RICO claim, among others.  However, Plaintiff has failed to provide any facts sufficient to support his claims, and his claims find no support in case law.  Accordingly, Plaintiff's claims fail on their face and should be dismissed.

## I.     NATURE OF MATTER BEFORE THE COURT

PennyMac filed suit against Brad Johnson ("Johnson" or "Plaintiff") and his wife, Elci Wijayaningsih, in Forsyth County, North Carolina District Court to reform a Deed of Trust securing Plaintiff's residential loan to actually encumber the house on the real property.  Although (i) Johnson received the loan at issue after applying for a residential loan, (ii) the loan at issue refinanced an earlier home loan taken out by Johnson, and (iii) Johnson's loan originator had Johnson's house appraised, Johnson claims that he and the originator only intended for the Deed of Trust to encumber vacant land.

Plaintiff filed counterclaims against PennyMac and third-party claims against Standard Guaranty Insurance Company ("SG"), Assurant, Inc. ("Assurant") and employees of PennyMac and SG and/or their affiliates in the North Carolina state court and removed the case to the Middle District of North Carolina.  *PennyMac Loan Servs., LLC v. Johnson*, No. 1:20CV175, (M.D.N.C.). PennyMac then moved to remand the case to Forsyth County District Court, and PennyMac, SG,

2

and Assurant moved to dismiss the counterclaims and third-party complaint filed against them. On March 8, 2021, the Middle District granted PennyMac's Motion to Remand. *PennyMac Loan Servs., LLC v. Johnson*, No. 1:20CV175, 2021 WL 861530, at *7 (M.D.N.C. Mar. 8, 2021). A hearing on PennyMac, SG, and Assurant's motions to dismiss is currently scheduled to occur in North Carolina state court on Thursday, May 6, 2021.

On March 19, 2021, Plaintiff filed his Complaint in this Court in his second attempt to turn a simple deed reformation action into a literal federal case. Other than the fact that Johnson allegedly lives in South Carolina, claims to have communicated by email and phone with PennyMac from South Carolina, and maintains a South Carolina bank account that he uses to pay the underlying loan, the State of South Carolina has no contact with this dispute. Case law is clear that these bare contacts are driven by Johnson's decisions, not PennyMac' decisions, and therefore, they cannot subject PennyMac to personal jurisdiction in this Court. PennyMac should be dismissed from this case on that basis.

In addition, Johnson's Complaint appears to be based upon his allegation that PennyMac increased the amount of his monthly mortgage payment to fund an escrow account used to pay for lender-placed homeowners insurance on the house at issue in the case. *See* Compl. ¶ 3-4. The duplicative state level matter makes it clear that abstention—and dismissal—is appropriate, as discussed below.

Finally, Johnson is a litigious man who regularly files meritless claims.[1] Here, he has attempted to bring RICO and other claims against PennyMac. Johnson's claims are meritless.

---

[1] Although he proceeds *pro se*, Johnson's pleadings should not be construed liberally. *See Fitchett v. Wilson*, No. 4:12-CV-00605-RBH, 2013 WL 5468389, at *4 n.11 (D.S.C. Sept. 30, 2013) (Judge Harewell noting that Johnson "signs his submissions to the Court, representing that he has a law degree," and describing Johnson as "no stranger to the court proceedings" whose "suits are countless" and whose "litigiousness stretches from the East Coast to the West Coast.").

WBD (US) 52045838v4

Although the Complaint recites the bare elements of the claims that it attempts to allege and contains the legal buzzwords that one would expect to find, the Complaint does not contain any facts to support its allegations. Instead, when the fluff is stripped away, the Complaint alleges that Johnson has suffered no damages because of anything that PennyMac has done or has omitted to do. PennyMac has refunded or otherwise credited all of the disputed sums that Johnson has paid PennyMac and has promised not to charge him those amounts unless and until it prevails in its deed reformation action. These facts do not give rise to any claim against PennyMac, and this Court should dismiss the Complaint.

## II.    STATEMENT OF FACTS

Johnson purchased Lots 16 and 18, Block 186, Section N-6, Long Beach (now Oak Island), North Carolina. Compl. ¶ 6. On or about May 28, 2009, Johnson encumbered Lots 16 and 18 using a deed of trust ("2009 Deed of Trust") in favor of MERS, as nominee for PrimeLending ("PrimeLending"), and the 2009 Deed of Trust was recorded in the Brunswick County Registry of Deeds. Compl. Exh. A. Johnson purchased homeowners and flood insurance coverage for house located on Lots 16 and 18 from Farm Bureau Insurance Company. Compl. ¶ 7.

Subsequently, Johnson purchased Lots 13, 15 and 17, Block 186, Section N-6, Long Beach (now Oak Island), North Carolina. *Id*. at ¶ 8. Lots 13, 15 and 17 are vacant lots. *Id*. at ¶ 9; *Boles v. Town of Oak Island*, 830 S.E.2d 878 (N.C. Ct.App. 2019) *rev'd* 837 S.E.2d 871. To avoid paying an annual Sewer District Fee imposed by the Town of Oak Island on unoccupied lots, Johnson drafted various Instruments of Combination and recorded these documents in the Brunswick County Registry. Compl. ¶ 9. Thus, by June 2013, Johnson (i) had purchased Lots 13, 15, 16, 17 and 18, including the house located on Lots 16, and 18, (ii) had obtained a loan from PrimeLending

4

secured by the house, (iii) had purportedly combined all five lots into one parcel for tax and assessment purposes, and (iv) was maintaining homeowners and flood insurance on the house.

On June 9, 2013, Johnson submitted a Uniform Residential Loan Application to Weststar Mortgage, Inc. ("Weststar"). *Id.* at ¶ 10. As part of its diligence, Weststar ordered an appraisal of all five of Johnson's lots, including the house. *Id.* at ¶ 11. Weststar ultimately approved Johnson's loan (the "2013 Loan") to close and sent his loan documents to him. *Id.* at ¶¶ 14-15. When he received the loan documents, Johnson supposedly noticed that the Deed of Trust purported to encumber only Lots 13, 15 and 17, *i.e.*, the vacant lots. *Id.* at ¶ 20. Johnson claims that he believed that Weststar intended to encumber only his vacant land even though (i) he applied for a residential loan, (ii) Weststar had the house appraised, and (iii) Weststar created an escrow account to pay taxes and insurance premiums on the house. *Id.* at ¶¶ 10-11, 28-29. Johnson also claims that he intended to encumber only the vacant land even though (i) he referred to this loan as a refinancing of his 2009 loan from PrimeLending, *id.* at Exh. V at 1, and (ii) executed and returned a flood disclosure to Weststar. *Id.*[2]

Johnson executed the loan documents for the 2013 Loan, including the Deed of Trust, and the Deed of Trust was recorded in the Brunswick County, North Carolina Registry. Compl. ¶¶ 10, 16-22, Exh. VII-VIII. MERS, as nominee for PrimeLending, recorded a Satisfaction of Security Instrument for the 2009 Deed of Trust within the statutorily required thirty-day period. *See* Exh. B; *see also* N.C. GEN. STAT. § 45-36.9(a). Subsequently, the servicing of the 2013 Loan was transferred to PennyMac, and the 2013 Loan and the related loan documents were later sold to PennyMac. Compl. ¶ 23, Exh. IX. An Assignment of Deed of Trust documenting the transfer of

---

[2] In the North Carolina case, PennyMac has brought a claim against Johnson and Elci Wijayaningsih, Johnson's wife, to reform the Deed of Trust to conform to the parties' intentions when entering it. *See* Exh. A. Hence, Johnson has responded with allegations that he and Weststar intended for the Deed of Trust securing his residential loan to encumber only raw land.

the beneficiary's rights under the Deed of Trust to PennyMac was filed later in the Brunswick County Registry of Deeds. Compl. Exh. XXIV.

From the inception of the 2013 Loan until September 20, 2017, first Weststar and then PennyMac created and maintained an escrow account and used the escrowed funds to pay for homeowners and flood insurance coverage for the house even though Johnson and Weststar supposedly intended for the 2013 Deed of Trust to encumber only vacant land. Compl. ¶¶ 10, 26. On September 20, 2017, Johnson called PennyMac and requested that it discontinue paying for the homeowners and flood insurance because it had a lien on vacant land only. *Id.* PennyMac's representative responded that he would look into the situation. *Id.*

Consistent with its servicing of the 2013 Loan for almost five years, PennyMac paid to renew Johnson's homeowners insurance in April 2018. *Id.* at ¶ 28. Subsequently, PennyMac informed Johnson that it would close his escrow account but that he was still required to pay for property insurance. *Id.* at ¶ 29.

In and after September 2018, Johnson claims to have had another series of communications with PennyMac. *Id.* at ¶ 31. In those conversations, Johnson alleges that PennyMac told him that if he separated Lots 16 and 18 (those on which the house is located) from Lots 13, 15 and 17 (the vacant land), it would not require property insurance coverage on the vacant land. *Id.* PennyMac, however, was consistent that it would continue to require flood insurance coverage. *Id.* On March 22, 2019, Johnson recorded an Instrument of Separation by which he purported to separate the vacant land from Lots 16 and 18. *Id.* at ¶ 32.

By letters dated May 14, 2019 and June 14, 2019, PennyMac informed Johnson that his homeowners insurance had expired and requested that he purchase homeowners insurance. *Id.* at Exh. XV. Johnson stated that he could not purchase homeowners insurance coverage for vacant

land. *Id*. at ¶¶ 34-35. Because Johnson refused to provide PennyMac with proof of homeowners insurance, PennyMac purchased lender-placed homeowners insurance coverage for the home from SG and funded the lender-placed insurance through the 2013 Loan's escrow account, resulting in an increased monthly payment. *Id*. at ¶¶ 36-37.

On or about August 20, 2019, Johnson wrote a complaint letter regarding PennyMac to the North Carolina Commissioner of Banks and the North Carolina Department of Insurance. *Id*. at ¶ 38. PennyMac responded by letters dated September 5, 2019, and September 19, 2019, both of which were signed by Efram Saldivar.[3] *Id*. at ¶¶ 39-40. In the September 5, 2019 letter, PennyMac acknowledged receipt of Johnson's letter, provided him with detailed information regarding his account status, and promised a more detailed response to his concerns. *Id*. at Exh. XX. PennyMac's September 19, 2019, letter provided that more detailed response. In this letter, PennyMac explained to the state regulators and Johnson that (i) while the Deed of Trust was prepared with Lots 13, 15 and 17 only in the legal description, Johnson's loan application states that the purpose of the loan was to refinance a then-existing loan encumbering the house on Lots 16 and 18, and (ii) PennyMac had made a title insurance claim to resolve the drafting error in the Deed of Trust's legal description. *Id*. at Exh. XXI. In addition, PennyMac also stated that it would not seek payment for homeowners insurance premiums from Johnson until the title issue was resolved and that it would remove the insurance premium from Johnson's escrow account. *Id*. Finally, PennyMac confirmed that it had mailed Johnson a notice, dated September 17, 2019, informing him that the homeowners insurance premium was removed from his escrow account. *Id*. A Customer Account Activity Statement, provided to Johnson by the September 5, 2019, letter,

---

[3] Johnson has previously attempted to file suit against PennyMac's employee Saldivar. Saldivar's only involvement with the subject matter of this case is that he drafted the September 5, 2019, and September 19, 2019 letters. Saldivar has not been served with process in this case, and this Court lacks jurisdiction over him. Although he does not appear, PennyMac's substantive arguments also dispose of any and all claims against Saldivar.

shows that the homeowners insurance premium was refunded to Johnson's account.  *Id*. at Exh. XX.

By letter dated March 20, 2020, PennyMac notified Johnson that it would maintain lender-placed homeowners insurance covering the home unless Johnson presented it with acceptable proof-of-insurance.  Compl. ¶ 49, Exh. XXVI.  Because Johnson failed to present acceptable proof-of-insurance, PennyMac purchased lender-placed homeowners insurance to cover the house, and created an escrow account associated with Johnson's loan to fund the payment of the lender-placed insurance.  *Id*. at ¶ 50, Exh. XXVII.  PennyMac subsequently increased the amount of Johnson's September 2020 monthly payment by approximately $600 to partially fund the escrow account used to pay for the lender-placed insurance.  *Id*. at ¶ 51, Exh. XXVIII.  Upon receipt of Johnson's complaint regarding the increase, PennyMac refunded Johnson the portion of his September 2020 mortgage payment earmarked to fund the escrow account and reduced his monthly payment back to the pre-escrow account level.

## III.     ARGUMENT

### A.     The Court should dismiss Plaintiffs' claims against PennyMac because personal jurisdiction does not exist over PennyMac within the State of South Carolina.

Pursuant to FED. R. CIV. P. 12(b)(2), a defendant "must affirmatively raise a personal jurisdiction challenge, but the plaintiff bears the burden of demonstrating personal jurisdiction at every stage following such a challenge."  *Grayson v. Anderson*, 816 F.3d 262, 267 (4th Cir. 2016).  The plaintiff must establish personal jurisdiction by a preponderance of the evidence but need only make a prima facie showing.  *Combs v. Bakker*, 886 F.2d 673, 676 (4th Cir. 1989).  In considering whether a plaintiff has met this burden, a court may look beyond the complaint to affidavits and exhibits in order to assure itself of personal jurisdiction.  *Grayson*, 816 F.3d at 269.  A court must also "construe all relevant pleading allegations in the light most favorable to the plaintiff, assume

8

credibility, and draw the most favorable inferences for the existence of jurisdiction." *Combs*, 886 F.2d at 676.

To establish the court's exercise of personal jurisdiction over a non-resident defendant, the plaintiff's allegations must establish that two conditions have been satisfied.  "First, the exercise of jurisdiction must be authorized by the long-arm statute of the forum state, and second, the exercise of personal jurisdiction must also comport with Fourteenth Amendment due process requirements." *Christian Sci. Bd. of Directors of First Church of Christ, Scientist v. Nolan*, 259 F.3d 209, 215 (4th Cir. 2001).  "South Carolina's long-arm statute has been interpreted to reach the outer bounds permitted by the Due Process Clause." *ESAB Group, Inc. v. Centricut, Inc.*, 126 F.3d 617, 623 (4th Cir. 1997).  "Consequently, the statutory inquiry necessarily merges with the constitutional inquiry, and the two inquiries essentially become one." *Id.*  "The central constitutional question the Court must address is whether the defendant has established minimum contacts with South Carolina such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice." *Carl v. Mazda Motor Corp.*, 2020 WL 7360174 *2 (D. S.C. Dec. 15, 2020).

The Due Process Clause permits the court to exercise personal jurisdiction over a nonresident defendant through either of two independent avenues.  "The first path is specific jurisdiction, which may be established if the defendant's qualifying contacts with the forum state also constitute the basis for the suit." *Universal Leather, LLC v. Koro Ar, S.A.,* 773 F.3d 553, 559 (4th Cir. 2014).  "The second path is general jurisdiction, which requires a more demanding showing of continuous and systematic activities in the forum state." *Universal Leather*, 773 F.3d at 559.

9

1.     **General jurisdiction does not exist over PennyMac within South Carolina.**

Under general jurisdiction, when a defendant has "continuous and systematic" contacts with the forum state, the defendant "may be sued in [the forum] state for any reason, regardless of where the relevant conduct occurred." *CFA Inst. v. Inst. of Chartered Fin. Analysts of India*, 551 F.3d 285, 292 n.15 (4th Cir. 2009). When the defendant is a corporation, "general jurisdiction requires affiliations 'so continuous and systematic as to render [the foreign corporation] essentially at home in the forum State,' *i.e.*, comparable to a domestic enterprise in that State." *Daimler AG v. Bauman*, 571 U.S. 117, 159 n.11 (2014) (*quoting Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 919 (2011)). Broad constructions of general jurisdiction are disfavored. *Nichols v. G.D. Searle & Co.*, 991 F.2d 1195, 1200 (4th Cir.1993).

PennyMac is a Delaware limited liability company and has its principal place of business in California. Compl., ¶ 2; Affidavit of Johnny Morton, ¶ 3.[4] PennyMac does not have an office in the South Carolina and owns only a de minimis number of lender-owned parcels of real estate located in South Carolina that formerly served as collateral for loans that it serviced. *Id*. at ¶ 4. Only a very small percentage of the loans that PennyMac services is secured by collateral located in South Carolina. *Id*. at 5. PennyMac cannot be regarded as being "at home" in South Carolina. *Roberts v. Cox Communications, Inc.*, 2020 WL 7080307 *7 (W.D.N.C. Dec. 3, 2020). Therefore, general jurisdiction does not exist over PennyMac in this Court.

2.     **Specific jurisdiction does not exist over PennyMac in South Carolina.**

A district court may exercise specific personal jurisdiction over a defendant only if the defendant has sufficient "minimum contacts" with the forum state, such that "the maintenance of the suit does not offend traditional notions of fair play and substantial justice." *Int'l Shoe Co. v.*

---

[4] A copy of the Affidavit of Johnny Morton is attached hereto as Exhibit C.

WBD (US) 52045838v4

*Wash.*, 326 U.S. 310, 316 (1945).  Accordingly, specific personal jurisdiction requires "that the relevant conduct have such a connection with the forum state that it is fair for the defendant to defend itself in that state."  *CFA Inst*, 551 F.3d at 292 n. 15.  The "minimum contacts" analysis "looks to the defendant's contacts with the forum state itself, not the defendant's contacts with persons who reside there."  *Walden v. Fiore*, 134 S. Ct. 1115, 1122–23 (2014).

The defendant's conduct "must be directed at the forum state in more than a random, fortuitous, or attenuated way."  *CFA Inst.*, 551 F.3d at 293.  Rather, it must "amount to a surrogate for presence and thus render the exercise of sovereignty just."  *Consulting Eng'rs Corp. v. Geometric Ltd.*, 561 F.3d 273, 277– 78 (4th Cir. 2009).  The defendant's actions must give it "fair warning that a particular activity may subject it to the jurisdiction of a foreign sovereign."  *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 472 (1985).

Specific personal jurisdiction does not exist over PennyMac in the State of South Carolina with respect to this case.  According to the Complaint, the State of South Carolina has the following connections with this case:  (i) Plaintiff Johnson resides in South Carolina, Compl. ¶ 3, (ii) PennyMac sent Johnson an email and he was located in South Carolina when he read it, *id*. at ¶ 25, (iii) Johnson called PennyMac when he was located in South Carolina, *id*. at ¶¶ 26, 28, 31, and (iv) PennyMac allegedly withdrew funds from Johnson's South Carolina bank account. *Id*. at ¶ 51.

None of these alleged contacts, when taken individually or collectively, is sufficient to confer personal jurisdiction over PennyMac to this Court because PennyMac's contacts with South Carolina in this case are driven by Johnson's decisions, not its own.  First, the law is clear that PennyMac is not subject to personal jurisdiction in South Carolina because Johnson may happen to live there. *Cleveland v. Accumarine and Transp., L.P.*, 2011 WL 939011 *5 (D. S.C. March 16, 2011).  Second, Johnson's decision to check his email when located within the State of South

11

Carolina and to call PennyMac from South Carolina, rather than from some other state, cannot

subject PennyMac to jurisdiction there. *Consulting Eng'rs Corp.*, 561 F.3d at 281. Finally,

PennyMac's withdrawal of funds from Johnson's bank account is also insufficient to confer

personal jurisdiction over PennyMac to this Court because Johnson chose where to maintain his

bank account, not PennyMac. *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408,

414 (1984) (personal jurisdiction does not exist over a defendant because it drew upon a resident

plaintiff's in state bank account); *Mellon Bank East (PSFS), NA v. Di Veronica Bros., Inc.*, 983

F.2d 551, 555 (3d Cir. 1993); *Archbold v. Grafton Suburban Credit Union*, 2013 WL 12291901

*3-4 (D. N.J. June 10, 2013). Therefore, specific jurisdiction does not exist over PennyMac in

South Carolina with respect to this case.

 Neither general nor specific jurisdiction exists over PennyMac with respect to this case in

the State of South Carolina. Therefore, this Court should dismiss PennyMac from this case.

**B. The Court should abstain from addressing this duplicative matter because there are pending state-level proceedings that involve the same subject matter.**

 It is well-settled that federal courts have the discretion to abstain from adjudicating disputes

that essentially involve matters of state law or state policy. As the Fourth Circuit has observed:

"The Supreme Court has admonished the federal courts to respect the efforts of state governments

to ensure uniform treatment of essentially local problems. Principles of federalism and comity

require no less. Basic abstention doctrine requires federal courts to avoid interference with a state's

administration of its own affairs." *Johnson v. Collins Entm't Co.*, 199 F.3d 710, 719 (4th Cir.

1999) (internal citations omitted).

 PennyMac's dispute with Johnson is a title reformation case onto which he has attempted

to glum some meritless state and federal law claims. Plainly, grounds for abstention are present

12

here. Specifically, *Younger* and *Colorado River* abstention doctrines direct a federal court to abstain from adjudicating this matter.

1. ***Younger* abstention is applicable because there are pending state-level proceedings that involve the same subject matter and implicate important state interests.**

*Younger* abstention, which is based on the Supreme Court's holding in *Younger v. Harris*, 401 U.S. 37 (1971), is applicable where a federal court's consideration of a matter would interfere with pending state-level proceedings. As the Fourth Circuit describes:

> The *Younger* doctrine expresses "a strong federal policy against federal-court interference with pending state judicial proceedings absent extraordinary circumstances." The doctrine recognizes that state courts are fully competent to decide issues of federal law, and has as a corollary the idea that all state and federal claims should be presented to the state courts.

*Richmond, Fredericksburg & Potomac R.R. Co. v. Forst*, 4 F.3d 244, 251 (4th Cir. 1993) (citations omitted). The Fourth Circuit further explains that *Younger* abstention "command[s] federal restraint when the federal action is duplicative, casts aspersion on state proceedings, disrupts important state enforcement efforts, and is designed to annul a state proceeding." *Moore v. City of Asheville*, 396 F.3d 385, 394–95 (4th Cir. 2005); *see also Beam v. Tatum*, 299 F. App'x 243, 246 (4th Cir. 2008) (reminding that *Younger* abstention reflects a "[s]ensitiv[ity] to principles of equity, comity, and federalism").

In order for *Younger* to be applicable, there must be (1) an ongoing state proceeding (2) that implicates important state interests (3) in which there is an adequate opportunity to raise federal claims. *Nivens v. Gilchrist*, 444 F.3d 237, 241 (4th Cir. 2006). Here, all three factors are readily satisfied.

13

a)    **There is an ongoing proceeding before the Forsyth County Superior Court involving the same parties and subject matter presented here.**

The Plaintiff's own allegations demonstrate *Younger*'s first element. Specifically, Plaintiff's Complaint reveals that there is an ongoing proceeding in the North Carolina General Court of Justice for Forsyth County regarding the identical subject matter. Compl. ¶¶ 44-47 (Ex. A, *PennyMac Loan Servs., LLC v. Johnson*, et. Al, Case No. 20-CVS-2436 (Forsyth County Superior Ct.)). While the first-filed North Carolina case was, and still is, pending in the state courts of North Carolina, the Plaintiff filed a competing lawsuit in this Court claiming that PennyMac increased the amount of his monthly mortgage payment to fund an escrow account used to pay for lender-placed homeowners insurance on the house at issue based upon the same counterclaims sought in the North Carolina case. Because the Plaintiff's Complaint is essentially identical to his counterclaims in the North Carolina Superior Court, clearly that ongoing proceeding presents the same issues for review and potential construction by a state court.

b)    **North Carolina has significant interests in the administration of its civil code, especially laws involving land.**

*Younger*'s second prong is likewise met here. A state interest will justify federal abstention when it speaks to "[f]unctions which make our states self-governing sovereigns, rather than 'mere political subdivisions' or 'regional offices'" of the United States government. *Harper v. PSC of W. Va.*, 396 F.3d 348, 352 (4th Cir. 2005).

The State's administration of its own property law is, of course, an essential part of North Carolina's sovereign operations. So, too, is its interest in deciding disputes involving land. *See, e.g.*, *Harper v. Pub. Serv. Comm'n of W. Va.,* 396 F.3d 348, 352 (4th Cir. 2005) ("[P]roperty law concerns, such as land use and zoning questions, are frequently 'important' state interests justifying Younger abstention."); *see also Toney v. LaSalle Bank Nat'l Ass'n*, 896 F.Supp.2d 455,

476 (D.S.C.2012) (citing *Shaffer v. Heitner*, 433 U.S. 186, 207–08 (1977) (recognizing a state's "strong interests in assuring the marketability of property within its borders[ ] and in providing a procedure for peaceful resolution of disputes about the possession of that property") (footnote omitted in original); *Sergeon v. Home Loan Ctr., Inc.*, No. 3:09–CV–01113–J–32JBT, 2010 WL 5662930 (collecting cases applying *Younger* abstention in light of a pending state foreclosure proceeding). Because the subject matter of the dispute involves real property, the case implicates important state interests.

### c)     Johnson can raise his claims in the state-level proceedings.

The final prong of the *Younger* analysis is also met, as Johnson will have every opportunity to raise its federal claims in the pending state-level proceedings. To be sure, "state courts have concurrent jurisdiction over civil RICO claims." *Tafflin v. Levitt*, 493 U.S. 455, 458, *rehearing denied*, 495 U.S. 915 (1990). Likewise, North Carolina state courts are no stranger to adjudicating questions involving the FDCPA. *See, e.g.*, *Davis Lake Cmty. Ass'n, Inc. v. Feldmann*, 138 N.C. App. 292, 295, 530 S.E.2d 865, 868 (2000) (rejecting application of the FDCPA to an association's attempt to collect unpaid assessments due to it directly).

It is straightforward, then, that the Plaintiff's federal claims can be adjudicated in the state—rather than federal—forum, and *Younger* abstention is therefore proper. *See Laurel Sand & Gravel, Inc. v. Wilson*, 519 F.3d 156, 166 (4th Cir. 2008) (reiterating that a primary purpose of abstention is "to maintain comity between the state and federal courts."); *Richmond, Fredericksburg & Potomac R.R. Co. v. Forst*, 4 F.3d 244, 251 (4th Cir.1993) (stating that "state courts are fully competent to decide issues of federal law"). In fact, the Supremacy Clause, *see* U.S. Const. Art. VI, requires as much. *See Testa v. Katt*, 330 U.S. 386 (1947) (holding that Article VI generally requires state courts to enforce federal law).

2. ***Colorado River*** **abstention is applicable here to bar prevent Johnson from going forward with his claims in this Court.**

In order for a federal court to abstain under the *Colorado River* doctrine, two conditions must be satisfied. First, there must be parallel proceedings in state and federal court. *Sto Corp. v. Lancaster Homes, Inc.*, 2001 WL 431504 *2 (4th Cir. April 27, 2001). "Suits are parallel if substantially the same parties litigate substantially the same issues in different forums." *New Beckley Mining Corp. v. Int'l Union, UMWA*, 946 F.2d 1072, 1073 (4th Cir.1991). Second, exceptional circumstances warranting abstention must exist. 2001 WL 431504 at *2. The Court in *Colorado River* announced several factors that are relevant in determining whether a particular case presents such exceptional circumstances. *Id*. A federal court should consider whether a state court has assumed jurisdiction over property. *Id*. In addition, such factors as "the inconvenience of the federal forum; the desirability of avoiding piecemeal litigation; and the order in which jurisdiction was obtained by the concurrent forums" should be considered. *Colorado River Water Conservation District v. United States*, 424 U.S. 800, (1976), 424 U.S. at 818, 96 S.Ct. 1236 (citations omitted). *In Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 103 (1983), the Supreme Court added two additional factors: whether state or federal law is implicated and whether the state court proceedings are adequate to protect the parties' rights. *See id.* at 23, 26.

a) **Parallel suits exist in this case.**

The instant case and the Forsyth County North Carolina state court case are parallel. The test for determining whether two suits are parallel focusses on whether substantially the same parties are litigating substantially the same issues in both suits. *Supra.* Here, a cursory review of Johnson's pleadings shows that the parties to the state court case and the instant case are substantially similar. In both cases, Johnson is bringing claims against PennyMac, SG, and

16

Assurant. *Compare* Complaint *with* First Amended Counterclaim and Third-Party Complaint.[5]  In addition, a review of the pleadings filed in both cases also shows that Johnson is attempting to litigate the same issues against PennyMac, SG, and Assurant in this Court and in the North Carolina state court.  *Id*.  Indeed, Johnson's Complaint filed in this Court is virtually a copy of his proposed Second Amended Counterclaims, originally filed in the Middle District of North Carolina prior to remand.[6]

**b)**    **Exceptional circumstances exist to justify abstention in this case.**

The exceptional circumstances required to justify abstention exist in this case.  First, the North Carolina state court has taken jurisdiction over real property and will decide whether to reform the Deed of Trust encumbering Johnson's property.  Second, this forum is an inconvenient one.  PennyMac has limited contacts with the State of South Carolina and has no offices within the state. *See supra* at 10.  In addition, neither Ms. Wijayaningsih, Johnson's wife who resides at the property at issue, nor any other Oak Island, North Carolina, witness can be compelled to attend the trial of this matter because Oak Island is located in North Carolina and is more than 100 miles from Florence.  *See* FED. R. CIV. P. 45(c).  Third, the North Carolina state court forum is an adequate one within which to protect the parties' rights. There is no credible allegation that the Forsyth County Superior Court is unable to decide the issues raised in that case.  Johnson himself filed his original counterclaim against PennyMac in the North Carolina state court prior to removing the case to the Middle District.  *See PennyMac Loan Services, LLC v. Johnson*, 2021 WL 861530 *2 (M.D.N.C. March 8, 2021).  Moreover, to the extent that Johnson believed that

---

[5] Johnson's First Amended Counterclaim, originally filed in the Middle District of North Carolina prior to remand, is the current operative counterclaim and third-party complaint against PennyMac, SG, and Assurant.  A copy of the same is attached hereto as Exhibit D.

[6] A copy of the proposed Second Amended Counterclaim is attached hereto as Exhibit E.

court to be unable or unwilling to protect his rights, applicable North Carolina procedural law allows Johnson to dismiss his counterclaims and third-party claims without prejudice. *See* N.C. R. CIV. P. 41. Presumably, he could invoke that right, but he has not done so. Fourth, the North Carolina state court obtained jurisdiction over its case well in advance of the filing of this case by Johnson. 2021 WL 861530 at *2. Again, the North Carolina state courts even obtained jurisdiction over Johnson's counterclaims and third-party claims prior to the filing of this lawsuit. *Id*. Finally, there is nothing to be gained by allowing piecemeal litigation to proceed in this case. Instead, if the instant case is allowed to proceed, the State of North Carolina's power to regulate property within its borders is imperiled. As shown *infra*, at least some of the issues in this case will be determined by a finding as to whether PennyMac had a "reasonable basis to believe" that Johnson had failed to comply with an obligation to maintain homeowners insurance on the intended collateral property. *See infra* at 31-32. While PennyMac believes that the answer to that question is obvious and can be decided at the instant stage of litigation, to the extent that it cannot be so decided, a decision by this Court adverse to PennyMac could impact PennyMac's North Carolina title reformation claim and impair the North Carolina court's ability to determine the ownership rights to land located in North Carolina. This Court should abstain from hearing this case rather than risk impairing North Carolina's legitimate interest in determining land ownership within its own borders.

**C.     Plaintiff has not alleged facts that, if true, would give rise to a plausible claim.**

To survive a Rule 12(b)(6) motion, "[f]actual allegations must be enough to raise a right to relief above the speculative level and have enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable

inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009) *citing Twombly*, 550 U.S. at 556. Where a complaint pleads facts that are "merely consistent with" a defendant's liability, it "stops short of the line between possibility and plausibility of 'entitlement to relief.'" *Id. quoting Twombly*, 550 U.S. at 557. Moreover, a court need not accept conclusory allegations regarding the legal effect of the facts alleged or "accept as true unwarranted inferences, unreasonable conclusions, or arguments." *Giarratano v. Johnson*, 521 F.3d 298, 302 (4th Cir. 2008) (citation omitted). Nor need the court accept "allegations that contradict matters properly subject to judicial notice or by exhibit." *Veney v. Wyche*, 293 F.3d 726, 730 (4th Cir. 2002).

1.    **The RICO claim fails.**

Johnson's proposed amended RICO claim fails because RICO "does not cover all instances of wrongdoing. Rather, it is a unique cause of action that is concerned with eradicating organized, long-term, habitual criminal activity." *US Airline Pilots Ass'n v. AWAPPA, LLC*, 615 F.3d 312, 317 (4th Cir. 2010). A civil RICO claim has four essential elements: "(1) conduct; (2) of an enterprise; (3) through a pattern; (4) of racketeering activity." *Robinson v. Brooks*, 2020 WL 2489082 *3 (M.D.N.C. May 14, 2020) *citing Whitney, Bradley & Brown, Inc. v. Kammermann*, 436 F. App'x 257, 258 (4th Cir. 2011). Where, as here, a RICO claim is based on predicate acts of wire fraud and/or mail fraud, the claimant must plead the circumstances of the fraudulent acts that form the alleged pattern of racketeering activity with specificity pursuant to FED. R. CIV. P. 9(b). *CS Technology, Inc. v. Horizon River Technologies, LLC*, 2020 WL 881266 *3 (W.D.N.C. Feb. 3, 2020) *citing Williams v. Equity Holding Corp.*, 245 F.R.D. 240, 243 (E.D. Va. 2007); *Proctor v. Metropolitan Money Store Corp.*, 645 F.Supp.2d 464, 476 (D. Md. 2009). The circumstances that must be alleged with particularity are "the time, place, and contents of the

19

false representations, as well as the identity of the person making the misrepresentation and what he obtained thereby." *3on v. Westinghouse Savannah River Co.*, 176 F.3d 776, 784 (4th Cir. 1999).

<strong>a)       RICO is inapplicable to this case.</strong>

The RICO statutes are inapplicable to this case because Johnson fails to allege sufficient facts to show that PennyMac conducted or participated in the affairs of the alleged "PennyMac-Association-in-Fact RICO Enterprise" rather than simply conducting its own affairs. *See United Food & Commercial Workers Unions v. Walgreen Co.*, 719 F.3d 849, 853-56 (7th Cir. 2013). To be liable under RICO, a party must participate in the operation or management of the enterprise itself. *Reves v. Ernst & Young*, 507 U.S. 170, 184-85 (1993). A party may not be held liable under RICO simply for conducting its own affairs, rather than the enterprise's affairs. *Id*.

Even if the Complaint could be construed to allege an enterprise, it does not allege any facts to show that PennyMac participated in the operation or management of that enterprise. Instead, the Complaint merely alleges that PennyMac owns and services Johnson's loan, sent him letters encouraging him to purchase homeowners insurance, and purchased lender-placed homeowners insurance when he failed to purchase his own insurance. Compl., *supra*. These acts are PennyMac's core business of loan servicing, a legal business. The Complaint contains no allegations to suggest that PennyMac managed or in any way interfered with SG or Assurant's businesses or did anything to direct the so-called "PennyMac-Association-in-Fact RICO Enterprise." Rather, at most, the Complaint asserts that PennyMac believes that Johnson and Weststar intended to encumber the house and has taken actions consistent with that contractual position with which Johnson disagrees. That Johnson disagrees with the manner in which PennyMac services his mortgage loan does not give rise to a RICO claim. 719 F.3d at 853-56;

20

*Kolar v. Preferred Real Estate Investments, Inc.*, 361 F. App'x 354, 363 (3d Cir. 2010) (refusing to allow plaintiff to turn contractual disagreements into RICO claims).

> **b)**     **Johnson cannot allege that PennyMac committed a pattern of racketeering activity.**

Johnson's RICO claims also fail because he cannot allege facts to show that PennyMac committed a pattern of racketeering activity. The term "racketeering activity" is defined to include a host of so-called predicate acts, including any act which is indictable under 18 U.S.C. § 1341 (relating to mail fraud), 18 U.S.C. § 1343 (relating to wire fraud), and 18 U.S.C. § 1951 (relating to Hobbs Act extortion). 18 U.S.C. § 1961. A pattern requires at least two acts of racketeering activity, but two acts alone do not necessarily establish a pattern. *GE Inv. Private Placement Partners II v. Parker*, 247 F.3d 543, 549 (4th Cir. 2001). "To demonstrate a pattern of such activity, the [claimant] must show continuity plus relationship, *i.e.*, that the racketeering predicates are related, and that they amount to or pose a threat of continued criminal activity." *US Airline Pilots Ass'n*, 615 F.3d at 318. "Predicate acts are related if they have the same or similar purposes, results, participants, victims, or methods of commission, or otherwise are interrelated by distinguishing characteristics and are not isolated events." *Menasco, Inc. v. Wasserman*, 886 F.2d 681, 683 (4th Cir. 1989) (quotation marks omitted).

> **(1)**     **Johnson cannot allege facts to show that PennyMac committed any predicate acts.**

Johnson fails to allege a pattern of racketeering because he fails to allege any facts sufficient to show that PennyMac committed any predicate acts. Johnson claims that PennyMac committed the predicate acts of wire fraud, mail fraud, and Hobbs Act extortion. Compl. ¶ 53. The elements of mail fraud and wire fraud are "(1) a scheme disclosing an intent to defraud, and (2) the use of the mails [or the wires] in furtherance of the scheme." *R.J. Reynolds Tobacco Co. S K Everhart Inc.*, 2003 WL 21788858, at *5 (M.D.N.C. July 31, 2003) *quoting Chisolm v.*

*Tran South Fin. Corp.*, 95 F.3d 331, 336 (4th Cir. 1996).  Johnson claims that PennyMac committed wire and/or mail fraud (i) by "perpetuating the false narrative" to Farm Bureau that Johnson had to have hazard insurance on Lots 16 and 18 to insure PennyMac's interest in Lots 13, 15 and 17; (ii) by "perpetuating the false narrative" to Johnson that he had to have hazard insurance on Lots 16 and 18 to insure PennyMac's interest in Lots 13, 15 and 17; (iii) by "perpetuating the false narrative" to Farm Bureau and Johnson that Johnson had to have hazard insurance on Lots 16 and 18 to insure PennyMac's interest in Lots 13, 15 and 17; and (iv) by "perpetuating the false narrative" to Johnson and the North Carolina Commissioner of Banks that Johnson had to have hazard insurance on Lots 16 and 18 to insure PennyMac's interest in Lots 13, 15 and 17. Compl. ¶ 75.

In fact, none of Johnson's claims are sufficient to allege that PennyMac engaged in mail or wire fraud.  First, Johnson cannot base a mail or wire fraud claim on any of his claims because none of Johnson's claims plead facts to show a scheme disclosing an intent to defraud.  On the contrary, at most, Johnson's claims show that PennyMac and Johnson are engaged in a title dispute and PennyMac is insisting that Johnson purchase homeowners insurance to provide coverage for the disputed house.  While Johnson may disagree with PennyMac's position, PennyMac's position does not constitute a scheme disclosing an intent to defraud Johnson.

Second Johnson cannot base a mail or wire fraud claim on PennyMac's alleged communications to him that he had to have hazard insurance on Lots 16 and 18 because the actual allegations in the Complaint undercut Johnson's claims.  Johnson specifically pleads that the PennyMac agent at issue told him that he would "look into" whether Johnson was required to maintain hazard insurance. Compl. ¶ 26.  A statement that an employee would "look into" whether

22

4c:21-cv-00815-TLW-TER     Date Filed 05/05/21     Entry Number 14     Page 23 of 34

hazard insurance was required does not constitute "perpetuating a false narrative" that such insurance was necessary.

Third, Johnson cannot base a mail or wire fraud claim on PennyMac's letters to the North Carolina Banking Commissioner. There is nothing in either letter that is false or misleading, and again, Johnson does not even allege any false or misleading statement with particularity. Indeed, in the September 19, 2019 letter, PennyMac acknowledges the title dispute at the heart of this case. The Complaint cannot even allege that these statements are false or misleading.

Likewise, Johnson's claims that PennyMac committed Hobbs Act extortion fail. The Hobbs Act defines "extortion," in pertinent part, as, "the obtaining of property from another, with his consent, induced by wrongful use of actual or threatened force, violence, or fear[.]" 18 U.S.C. § 1951(b)(2). Johnson claims that PennyMac committed extortion by reminding him of his obligations to maintain homeowners insurance and by telling him that it would purchase lender-placed insurance on his home if he failed to provide proper proof of insurance. Compl., ¶ 77. These allegations prove that PennyMac was acting in the opposite manner as required to commit Hobbs Act extortion. Instead of attempting to obtain Johnson's property, PennyMac told Johnson to purchase his own homeowners insurance from the carrier of his choice – a carrier that would definitely not be PennyMac or any of the Third-Party Defendants. That carrier, not PennyMac nor the Third-Party Defendants, would gain Johnson's insurance premium. Thus, PennyMac's acts cannot constitute Hobbs Act extortion.

### (2)     Johnson cannot allege continuity.

Even if Johnson could allege that PennyMac committed two predicate acts, he cannot allege that those predicate acts pose a threat of continuing criminal activity as required to allege a pattern of racketeering activity. "'Continuity' is both a closed- and open-ended concept, referring

23

either to a closed period of repeated conduct, or to past conduct that by its nature projects into the future with a threat of repetition." *H. J. Inc. v. Northwestern Bell Tel. Co.*, 492 U.S. 229, 241 (1989). A closed-ended pattern of racketeering activity involves predicate acts extending over a substantial period of time. *First Capital Asset Mgmt., Inc. v. Satinwood, Inc.*, 385 F.3d 159, 181 (2d Cir.2004). Duration alone, however, is not dispositive, especially in a case where the alleged illegal plan was directed at a single goal. *FD Prop. Holding, Inc. v. U.S. Traffic Corp.*, 206 F.Supp.2d 362, 371 (E.D.N.Y.2002). Instead, to measure whether a claimant has pled the existence of closed-ended continuity, a court must also consider a variety of non-dispositive factors, including the number and variety of acts, the number of participants, the number of victims, and the presence of separate schemes. *GICC Capital Corp. v. Tech. Fin. Grp., Inc.,* 67 F.3d 463, 467 (2d Cir.1995).

"To allege open-ended continuity, a [claimant] must plead facts that demonstrate a threat of continuity, *i.e.*, facts that give rise to a reasonable expectation that the racketeering activity will extend indefinitely into the future." 2020 WL 881266 at *3 *citing US Airline Pilots Ass'n*, 615 F.3d at 318. Where an enterprise primarily conducts a legitimate business, there must be allegations from which it may be inferred that the predicate acts were the regular way of operating that business, or that the nature of the predicate acts themselves implies a threat of continued criminal activity. *Cofacredit, S.A. v. Windsor Plumbing Supply Co., Inc.*, 187 F.3d 229, 243 (2d Cir.1999).

Johnson cannot allege facts sufficient to show that PennyMac's acts pose a threat of continued criminal activity. Allegations that a mortgage servicer committed the predicate acts of extortion, wire fraud, and mail fraud over a seven-year period to wrongfully obtain its mortgagee's property and cause the mortgagee to default on its mortgage do not satisfy the requirements to

plead closed-end continuity because the alleged scheme only involves one mortgagee and one loan. *Ciuffetelli v. Apple Bank for Sav.*, 208 F.3d 202, 2000 WL 340388 *3 (2d Cir. Mar. 30, 2000); *Dolan v. Fairbanks Capital Corp.*, 930 F.Supp.2d 396, 410-11 (E.D.N.Y. 2013).    Likewise, allegations that a mortgage servicer committed various predicate acts aimed at wrongfully obtaining funds and property from a borrower are never sufficient to plead open-ended continuity because the one borrower necessarily has finite resources that limit the threat of future repetition. 930 F.Supp.2d at 408-10.

Johnson has not alleged any actual facts with respect to any loan other than his own. Therefore, Johnson's one-borrower, one-loan allegations are insufficient to allege a closed-end or open-end pattern of continuity as a matter of law.  930 F.Supp.2d at 410-11, 2000 WL 340388 at *3.

### c)    Johnson has not alleged facts to show that the alleged predicate acts caused him any damage.

To recover monetary damages of any sort pursuant to his RICO claim, Johnson must allege facts sufficient to show that PennyMac's alleged RICO violation was the "but for" and proximate cause of his alleged damage.  18 U.S.C. § 1964(c); *Bridge v. Phoenix Bond & Indem. Co.*, 553 U.S. 639, 654 (2008), *Holmes v. Securities Investor Protection Corp.*, 503 U.S. 258, 265-66 (1992).  In other words, "RICO causation requires a proximity of statutory violation and injury such that the injury is sequentially the direct result—generally at 'the first step' in the chain of causation."  *Slay's Restoration, LLC v. Wright Nat'l Flood. Ins. Co.*, 884 F.3d 489, 494 (4th Cir. 2018); *Page v. Select Portfolio Servicing, Inc.*, 2013 WL 4679428, at *4 (M.D.N.C. Aug. 30, 2013) (a plaintiff "must allege a direct nexus between the RICO predicate acts and [his] alleged injury").

At the most, Johnson has suggested that he was damaged because PennyMac used his escrow funds to purchase lender-placed insurance.  This suggested injury, however, does not flow

from the predicate acts allegedly committed by PennyMac.  Instead, PennyMac's right to purchase lender-placed insurance and charge Johnson's escrow account with the costs arises from the Deed of Trust, not any communication by PennyMac to Johnson.  Whether PennyMac committed any of the predicate acts alleged by Johnson has no bearing on PennyMac's right to purchase lender-placed insurance for the house located on Lots 16 and 18.  Thus, no predicate act allegedly committed by PennyMac can constitute a proximate cause for any damage allegedly suffered by Johnson.  Indeed, as shown *supra,* PennyMac's communications to Johnson encouraged him to purchase his own homeowners insurance rather than allow PennyMac to purchase lender-placed coverage on his behalf.  Because Johnson does not seek any non-monetary relief on his alleged RICO claim, *see* Compl. at 64-65, Johnson's inability to allege facts to show that a predicate act committed by PennyMac proximately caused him damage should cause this Court to dismiss his RICO claim.

### d)     Johnson fails to state a claim for RICO conspiracy.

RICO § 1962(d) makes it unlawful "to conspire to violate" § 1962(c).  To plead claim for RICO conspiracy, a claimant must allege that "each [party to be held liable] agreed that another coconspirator would commit two or more acts of racketeering." *United States v. Pryba*, 900 F.2d 748, 760 (4th Cir. 1990).  Johnson's failure to state a cognizable claim pursuant to § 1962(c) is necessarily fatal to his § 1962(d) claim.  *Parker,* 247 F.3d at 551 n.2 (4th Cir. 2001).  Therefore, Johnson's RICO conspiracy claim fails for all of the reasons his § 1962(c) claims fail.

Moreover, to plead a claim for violation of § 1962(d), Johnson must "adequately plead agreement to the conspiracy on the part of each defendant . . ." *Walters v. McMahen*, 795 F.Supp.2d 350, 356 (D. Md. 2011).  Johnson has not alleged any facts sufficient to show that PennyMac entered into any such agreement or even that such an agreement existed.  Therefore,

WBD (US) 52045838v4

this Court should dismiss Johnson's § 1962(d) conspiracy claim. *Twombly*, 550 U.S. at 570 (claim dismissed for inability to allege facts to show an agreement).

At bottom, Johnson has strung together all of the legal buzzwords that one would expect to find in a proper RICO claim. The problem for Johnson's claim, however, is that stringing together buzzwords is all he has done. He has not provided any facts to support his claims. Such pleading does not allege a plausible claim and should be dismissed. *See Johnson v. Pope*, 2013 WL 6500752 *2 (E.D.N.C. Dec. 11, 2013) (Johnson's purported RICO claim failed to state a claim because it was a recitation of the elements and a series of labels).

      **2.**      **The FDCPA claim fails because PennyMac is not a debt collector.**

Johnson's FDCPA claim fails because the Complaint does not plead sufficient facts to show that PennyMac is a debt collector. The FDCPA creates a private right of action against "debt collectors." 15 U.S.C. § 1692k. A debt collector is defined as anyone who "regularly collects or attempts to collect ... debts owed or due ... another." *Henson v. Santander Consumer USA Inc.*, 137 S.Ct. 1718, 1721 (2017) *quoting* 15 U.S.C. 1692a(6). Because of the requirement that the debt that is being collected be "owed or due another," an entity that regularly purchases debts and attempts to collect them is not a debt collector. 137 S.Ct. at 1721-22. The Complaint specifically alleges that PennyMac purchased Johnson's loan before it attempted to collect it. Compl. ¶ 23, Exh. IX. Therefore, PennyMac is not a "debt collector" within the meaning of the FDCPA and cannot be liable pursuant to the act. 137 S.Ct. at 1721-22. The Court should dismiss Johnson's FDCPA claim.

WBD (US) 52045838v4

3.    **The breach of contract claims fail.**

    a)    **The breach of contract with fraudulent act claim fails because the claim is not a recognized cause of action.**

Johnson's purported breach of contract with fraudulent act claim fails because governing North Carolina law does not recognize that claim.  Johnson alleges that PennyMac somehow breached the Deed of Trust and committed a fraudulent act.  Compl. ¶¶ 108-117.  The Deed of Trust, however, specifically provides as follows:

> This Security Instrument shall be governed by federal law and the law of the jurisdiction of the state in which the Property is located.  All rights and obligations contained in this Security Instrument are subject to any requirements and limitations of Applicable law. . .

Compl., Exh. VII.  The Property is located in the State of North Carolina.  *Id*. at ¶¶ 6, 8.  Therefore, North Carolina law governs the Deed of Trust and any of Johnson's rights and obligations contained in the Deed of Trust are subject to North Carolina law.  North Carolina law does not recognize a claim for breach of contract with fraudulent act.  *Curtis v. Café Enterprises, Inc.*, 2016 WL 6916786 *10 (W.D.N.C. Nov. 11, 2016).  Therefore, Johnson's counterclaim for breach of contract with fraudulent act should be dismissed.

    b)    **The breach of contract with fraudulent act claim fails on its merits.**

To the extent that Johnson claims that South Carolina law governs his breach of contract with fraudulent act claim, that claim fails because the Complaint fails to plead a fraudulent act.  To plead a claim for breach of contract with fraudulent act, a party must plead three elements: "(1) a breach of contract, (2) fraudulent intent relating to the breaching of the contract and not merely to its making, and (3) a fraudulent act accompanying the breach."  *Conner v. City of Forest Acres*, 348 S.C. 454, 465-66, 560 S.E.2d 606, 612 (2002).  A fraudulent act is "any act characterized by dishonesty in fact or unfair dealing." 348 S.C. at 466, 560 S.E.2d at 612.  "The fraudulent act may be prior to, contemporaneous with, or subsequent to the breach of contract, but it must be

28

connected with the breach itself and cannot be too remote in either time or character." *Floyd v. Country Squire Mobile Homes, Inc.*, 287 S.C. 51, 54, 336 S.E.2d 502, 504 (S.C. Ct.App. 1985). Pursuant to Rule 9(b), the allegedly fraudulent acts must be plead with particularity. *Neuman v. Levan*, 2009 WL 1856569 *3 (D. S.C. June 26, 2009).

While Johnson again uses the correct buzzwords, he has not pled sufficient facts to allege that PennyMac committed any fraudulent act. First, Johnson pleads that PennyMac committed a fraudulent act by demanding that he buy homeowners' insurance on his home on Lots 16 and 18 in contravention of a purported unilateral contract that he made with PennyMac. Compl. ¶ 33. In reality, however, the terms of the purported unilateral contract were that Johnson would not be required to insure the vacant land on Lots 13, 15 and 17:

> PennyMac employees/agents in the Escrow/Insurance Area stated that if Dr. Johnson separated Lots 13, 15 & 17 from Lots 16 & 18, property insurance on the home, located on Lots 16 & 18, would not be required to insure PennyMac's security interest in the vacant land, i.e., Lots 13, 15 & 17.

Compl. ¶ 31. Thus, PennyMac's statements requiring Johnson to purchase insurance on the home are not inconsistent with the purported unilateral agreement and certainly cannot be fraudulent.

Second, Johnson alleges that PennyMac committed a fraudulent act by sending him letters suggesting that he purchase his own homeowners insurance on the home located on Lots 16 and 18 and informing him that PennyMac would purchase lender-placed coverage if he failed to purchase his own insurance. Compl. ¶ 33. This allegation is insufficient to plead a fraudulent act because it is not dishonest or unfair. At most, the letters merely convey PennyMac's position regarding Johnson's need to purchase homeowners insurance coverage and PennyMac's truthful position regarding the actions that it would take if Johnson failed to purchase his own coverage. Although Johnson may disagree with PennyMac's position, a truthful statement of PennyMac's

views and a truthful statement regarding the steps PennyMac would take to protect that position cannot be fraudulent or dishonest.

### c) The simple breach of contract claim fails.

To the extent that Johnson characterizes his claim as a breach of contract claim instead of a breach of contract with fraudulent act claim, Johnson's allegations still fail to state a claim. To allege a breach of contract claim, a party must plausibly allege (1) the existence of a valid contract and (2) a breach of the terms of that contract. *See McLamb v. T.P. Inc.*, 173 N.C. App. 586, 588, 619 S.E.2d 577, 580 (2005). Johnson suggests that PennyMac breached the Deed of Trust by acting in contravention of its terms in some unspecified manner and claims that PennyMac breached the alleged unilateral agreement between the parties. Compl. ¶¶ 110-112. To the extent that Johnson's breach of contract claim relies upon the alleged breach of the parties' unilateral agreement, that claim fails because none of PennyMac's actions breached the alleged unilateral agreement. *Supra* at 4-7, 28-29. Likewise, to the extent that Johnsons' breach of contract claim relies upon PennyMac's alleged breach of the Deed of Trust, no provision of the Deed of Trust prevents PennyMac from taking any of the acts that it is alleged to have taken in the Complaint. Without such a provision, Johnson's breach of contract claim fails. *Waddell v. U.S. Bank, Nat'l Ass'n*, 395 F.Supp.3d 676, 685-86 (E.D.N.C. 2019) (holding that a plaintiff's breach of deed of trust allegations failed to state a claim when the plaintiff could point to no specific provision of the deed of trust that allegedly was breached).

### 4. The unjust enrichment claim fails.

Johnson attempts to bring an unjust enrichment claim against PennyMac based upon his allegation that he incurred a $600 per year reoccurring sewer fee because he separated his vacant lots from the lots on which his house is located. Comp. ¶ 118. This claim fails.

Unjust enrichment is "a claim in quasi contract or a contract implied in law." *Booe v. Shadrick,* 322 N.C. 567, 570, 369 S.E.2d 554, 556, (1988). The doctrine has been described as "the result or effect of a failure to make restitution of, or for, property or benefits received under such circumstances as to give rise to a legal or equitable obligation to account therefor. It is a general principle underlying various legal doctrines and remedies, that one person should not be permitted unjustly to enrich himself at the expense of another." *Watson Elec. Constr. Co. v. Summit Cos., LLC*, 160 N.C.App. 647, 652, 587 S.E.2d 87, 92 (2003). However, "the mere fact that one party was enriched, even at the expense of the other, does not bring the doctrine of unjust enrichment into play. There must be some added ingredients to invoke the unjust enrichment doctrine." *Id*. Indeed, there are five elements to a prima facie claim for unjust enrichment:

> First, one party must confer a benefit upon the other party.... Second, the benefit must not have been conferred officiously, that is it must not be conferred by an interference in the affairs of the other party in a manner that is not justified in the circumstances.... Third, the benefit must not be gratuitous.... Fourth, the benefit must be measurable.... Last, the defendant must have consciously accepted the benefit.

*JPMorgan Chase Bank, Nat'l Ass'n v. Browning*, 230 N.C.App. 537, 541-42, 750 S.E.2d 555, 559 (2013).

Johnson cannot state a claim for unjust enrichment because he does not claim that he conferred a nongratuitous benefit on PennyMac which PennyMac accepted. Simply put, while Johnson may have incurred additional sewer fees based upon his decision to separate his various parcels of land, those fees were paid to Oak Island, not PennyMac, and PennyMac did not benefit from the payment of those fees or the separation of the various parcels. Therefore, Johnson cannot bring an unjust enrichment claim against PennyMac based upon that decision.

5.    **The RESPA claim fails.**

Johnson attempts to bring a RESPA claim against PennyMac for purchasing lender-placed insurance that was not "bona fide and reasonable" in violation of 12 U.S.C. § 2605(m).  Compl. ¶ 124.  Johnson's RESPA claim fails.

RESPA's implementing regulations define a bona fide and reasonable charge to mean "a charge for a service actually performed that bears a reasonable relationship to the cost of the servicer's cost of providing the service, and is not otherwise prohibited by applicable law." 12 C.F.R. § 1024.37(h)(2).  Johnson does not allege that (i) SG, in fact, did not provide lender-placed homeowners insurance coverage for his home, (ii) the cost of the lender-placed insurance did not bear a reasonable relationship to PennyMac's cost of obtaining the insurance, or (iii) that applicable law prohibits PennyMac from obtaining and SG from providing the coverage. Therefore, he cannot allege that PennyMac's purchase of the lender-placed coverage was not "bona fide and reasonable" under RESPA.

To the extent that Johnson claims that PennyMac could never obtain "bona fide and reasonable" lender-placed insurance on the residence due to the title defect in the Deed of Trust, that argument also fails.  RESPA's implementing regulations allow a servicer to charge a borrower for a lender-placed insurance premium if the servicer has "a reasonable basis to believe" that the borrower has failed to comply with the obligation to maintain hazard insurance.  12 C.F.R. § 1024.37(b).  PennyMac obviously has a reasonable basis to believe that it has an interest in the residence and that, when corrected to eliminate the mistaken collateral description, the Deed of Trust will require Johnson to maintain hazard insurance on the house.  Thus, PennyMac cannot be liable under RESPA for requiring Johnson to pay the premiums necessary to maintain lender-placed hazard insurance on the property.

## CONCLUSION

This Court should dismiss Johnson's Complaint.  Personal jurisdiction does not exist over PennyMac in this Court because Johnson drove the only contacts between South Carolina and Johnson's claims in this case.  Further, to the extent that personal jurisdiction existed over PennyMac in this case, the Court should abstain from hearing this case pursuant to both *Colorado River* and *Younger* abstention doctrines.  Finally, even if this Court does not abstain from hearing this case, it should dismiss Johnson's claims against PennyMac because Johnson has not pled a claim against PennyMac.  At most, he has strung other some buzzwords in an effort to suggest a claim.  This effort its insufficient, and his claims should be dismissed.

This the 5th day of May, 2021.

WOMBLE BOND DICKINSON (US) LLP

*/s/ S. Sterling Laney, III*
S. Sterling Laney, III (Federal Bar No. 6255)
*sterling.laney@wbd-us.com*
550 South Main Street, Suite 400
Greenville, SC 29601
864.255.5429

M. Todd Carroll (Federal Bar No. 9742)
*todd.carroll@wbd-us.com*
Bryant S. Caldwell (Federal Bar No. 13125)
*bryant.caldwell@wbd-us.com*
1221 Main Street, Suite 1600
Columbia, SC 29201
803.454.6504

***Attorneys for Defendant,***
***PennyMac Loan Services, LLC***

33

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on May 5, 2021 the foregoing **MOTION TO DISMISS PURSUANT TO RULE 12(B)(1), 12(B)(2), AND 12(B)(6)** was filed with the Clerk of Court using the CM/ECF system, and a true and correct copy was sent via first class mail, postage prepaid to the following:

Brad R. Johnson, Ph.D., J.D., C.P.A., *Pro Se*
8669 Laurel Woods Drive
Myrtle Beach, SC  29588

Standard Guaranty Insurance Company
260 Interstate North Circle SE
Atlanta, GA 30339

Assurant, Inc.
28 Liberty Street, 41st Floor
New York, NY 10005

Mark W. Merritt
Robinson, Bradshaw & Hinson, P.A.
101 North Tryon Street, Suite 1900
Charlotte, N.C. 28246
COURTESY COPY VIA REGULAR MAIL ONLY


*/s/S. Sterling, Laney, III*
S. Sterling Laney, III

34