IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
FLORENCE DIVISION

BRAD R. JOHNSON,
   Plaintiff,

     v.

PENNYMAC LOAN SERVICES, LLC,
STANDARD GUARANTY INSURANCE
COMPANY, and ASSURANT, INC.,

   Defendants.

Case No. 4:21-cv-815-TLW-TER

**Defendants Standard Guaranty Insurance Company and
<u>Assurant, Inc.'s Motion to Dismiss Count I of the Complaint</u>**

W. Glenn Merten
*pro hac vice* forthcoming
FAEGRE DRINKER BIDDLE
  & REATH LLP
1500 K Street, NW
Suite 1100
Washington, D.C. 20005
(202) 842-8800
glenn.merten@faegredrinker.com

B. Rush Smith III
Federal Bar. No. 5031
Thomas T. Hydrick
Federal Bar No. 13322
NELSON MULLINS RILEY &
  SCARBOROUGH LLP
1320 Main Street / 17th Floor
Post Office Box 11070 (29211-1070)
Columbia, SC 29201
(803) 799-2000
rush.smith@nelsonmullins.com
thomas.hydrick@nelsonmullins.com

Attorneys for Defendants Assurant, Inc. and
Standard Guaranty Insurance Company

## TABLE OF CONTENTS

**Page**

NATURE OF THE MATTER BEFORE THE COURT ............................................................. 1

RELEVANT FACT AND PROCEDURAL HISTORY ...................................................... 2

ARGUMENT ............................................................................................................. 7

    I.     Governing Legal Standards .................................................................. 7

    II.    Johnson's RICO Claim is Barred by the Doctrine of Res Judicata ...................... 8

    III.   Johnson Fails to State a § 1962(c) RICO Claim .................................... 10

         A.    The Assurant Defendants Conducted Their Own Affairs, Not Those of the Purported RICO Enterprise .................................... 10

         B.    No Pattern of Racketeering Activity is Plausibly Alleged ..................... 12

            1.    The Assurant Defendants Did Not Engage in Any ..................... 12

            Racketeering Activity ............................................................. 12

            2.    There Was No Pattern of Racketeering Activity ......................... 18

         C.    Johnson Has Not And Cannot Plead That Predicate Offenses Caused His Injury ...................................................................... 19

    IV.   Johnson Fails to State a Claim For RICO Conspiracy ........................... 22

CONCLUSION ...................................................................................................... 23

# TABLE OF AUTHORITIES

**Page(s)**

CASES

*AARP v. Am. Fam. Prepaid Legal Corp.*,
  604 F. Supp. 2d 785 (M.D.N.C. 2009) ...................................................................11

*Al-Abood ex rel. Al-Abood v. El-Shamari*,
  217 F.3d 225 (4th Cir. 2000) ...........................................................................14

*Allstate Ins. Co. v. Weir*,
  2008 WL 4877047 (E.D.N.C. Nov. 10, 2008) ......................................................12

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009) ...........................................................................7, 12, 13, 20

*Atkinson v. Prestage*,
  2016 WL 7131918 (D.S.C. Aug. 16, 2016) ...........................................................7

*Bell Atlantic Corp. v. Twombly*,
  550 U.S. 544 (2007) ...........................................................................................7, 19

*Belton v. W. Marine Inc.*,
  2015 WL 7180519 (D.S.C. Nov. 13, 2015) ...........................................................7

*Bridge v. Phoenix Bond & Indem. Co.*,
  553 U.S. 639 (2008) ...........................................................................................19

*Chisolm v. TranSouth Fin. Corp.*,
  95 F.3d 331 (4th Cir. 1996) ...............................................................................12

*Circeo-Loudon v. Green Tree Servicing., LLC*,
  2014 WL 4219587 (S.D. Fla. Aug. 25, 2014) ......................................................21

*Davis v. Harwell*,
  2008 WL 4442604 (D.S.C. Sept. 25, 2008) ...........................................................8

*Dennis v. Gen. Imaging, Inc.*,
  918 F.2d 496 (5th Cir. 1990) ..........................................................................20, 22

*Dtex, LLC v. BBVA Bancomer, S.A.*,
  405 F. Supp. 2d 639 (D.S.C. 2005) ......................................................................19

*Du Phan v. Clinard Oil Co.*,
  798 S.E.2d 812 (N.C. Ct. App. 2017) ....................................................................9

# TABLE OF AUTHORITIES
(continued)

**Page**

*Edwards v. City of Goldsboro*,
   178 F.3d 231 (4th Cir. 1999) ................................................................................7

*Estate of Means ex rel. Means v. Scott Elec. Co., Inc.*,
   701 S.E.2d 294 (N.C. App. Ct. 2010) ...................................................................9

*Federated Dep't Stores, Inc. v. Moitie*,
   452 U.S. 394 (1981) ..............................................................................................9

*Fitchett v. Wilson*,
   2013 WL 5468389 (D.S.C. Sept. 30, 2013) ..........................................................8

*Flip Mortg. Co. v. McElhone*,
   841 F.2d 531 (4th Cir. 1988) ..............................................................................14

*GE Inv. Priv. Placements Partners II v. Parker*,
   247 F.3d 543 (4th Cir. 2001) ..................................................................18, 19, 22

*Giarratano v. Johnson*,
   521 F.3d 298 (4th Cir. 2008) ................................................................................8

*H.J. Inc. v. Nw. Bell Tel. Co.*,
   492 U.S. 229 (1989) ............................................................................................18

*Hemi Grp., LLC v. City of New York*,
   559 U.S. 1 (2010) ..........................................................................................19, 21

*Howard v. Piggly Wiggly*,
   2007 WL 840308 (D.S.C. Mar. 15, 2007) ............................................................8

*In re Ins. Brokerage Antitrust Litig.*,
   618 F.3d 300 (3d Cir. 2010) ...............................................................................10

*Johnson v. Pope*,
   2013 WL 6500752 (E.D.N.C. Dec. 11, 2013) ....................................................13

*Kehr Packages, Inc. v. Fidelcor, Inc.*,
   926 F.2d 1406 (3d Cir. 1991) .............................................................................15

*Keith v. Aldridge*,
   900 F.2d 736 (4th Cir. 1990) ................................................................................8

*Kolar v. Preferred Real Est. Invs., Inc.*,
   361 F. App'x 354 (3d Cir. 2010) ...................................................................14, 15

**TABLE OF AUTHORITIES**
(continued)

**Page**

*Life Funding Options, Inc. v. Blunt*,
  2019 WL 1052335 (D.S.C. Jan. 30. 2019) ................................................................12

*In re McNallen*,
  62 F.3d 619 (4th Cir. 1995) ......................................................................................8

*Menasco, Inc. v. Wasserman*
  886 F.2d 681 (4th Cir. 1989) ..................................................................7, 12, 13, 14

*Miller v. Dogwood Valley Citizen's Ass'n, Inc.*,
  2008 L 3992350, at *7 (W.D. Va. Aug. 28, 2008) ............................................17, 19

*Morris v. Green Tree Servicing, LLC*,
  2015 WL 4113212 (D. Nev. July 8, 2015) ...............................................................17

*North Carolina Supported Emp. v. North Carolina Dep't of Health & Hum. Servs.*,
  2010 WL 4696919 (E.D.N.C. Aug. 21, 2010) ..........................................................16

*Page v. Select Portfolio Servicing, Inc.*,
  2013 WL 4679428 (M.D.N.C. Aug. 30, 2013) ..........................................................20

*Palmetto Design Assocs., Inc. v. B G Framing Co., Inc.*,
  2021 WL 1227086 (D.S.C. Apr. 1, 2021) ...................................................................9

*PennyMac Loan Services, LLC. v. Johnson*,
  Case No. 20-cv-175 (M.D.N.C), ECF Nos. 1-7 .......................................................5, 6

*PennyMac Loan Servs., LLC v. Johnson*,
  2021 WL 861530 (M.D.N.C. Mar. 8, 2021) ...............................................................6

*Pennymac Loan Servs. v. Denman*,
  2017 Ohio Misc. LEXIS 14952 (February 9, 2017) ..................................................18

*Pennymac Loan Servs. v. Gamble*,
  2017 Ohio Misc. LEXIS 19522 (September 1, 2017) ................................................18

*Pennymac Loan Servs. v. Infante*,
  2017 Ohio Misc. LEXIS 5351 (December 14, 2017) ................................................18

*Perkins v. South Carolina Cmty. Bank*,
  2017 WL 121851 (D.S.C. Jan 1, 2017) ......................................................................7

*Providence Hall Assocs. Ltd. P'ship v. Wells Fargo Bank N.A.*,
  816 F.3d 273 (4th Cir. 2016) .....................................................................................9

# TABLE OF AUTHORITIES
(continued)

**Page**

*Reves v. Ernst & Young*,
    507 U.S. 170 (1993)................................................................10

*Roberts v. Wells Fargo Bank, N.A.*,
    2013 WL 1233268 (S.D. Ga. Mar. 27, 2013) ........................................11

*Robinson v. Am. Honda Motor Co.*,
    551 F.3d 218 (4th Cir. 2009) ..............................................................7

*Scheidler v. Nat'l Org. for Women, Inc.*,
    537 U.S. 393 (2003)..........................................................................17

*Sedima, S.P.R.L. v. Imrex Co.*,
    473 U.S. 479 (1985)..........................................................................10

*Slay's Restoration, LLC v. Wright Nat'l Flood. Ins. Co.*,
    884 F.3d 489 (4th Cir. 2018) ............................................................20

*State ex rel. Tucker v. Frinzi*,
    474 S.E.2d 127 (N.C. 1996)..............................................................9

*Sun v. Bluffton Police Dep't.*,
    2010 WL 3786541 (D.S.C. July 21, 2010) ........................................20

*United States v. Pryba*,
    900 F.2d 748 (4th Cir. 1990) ............................................................22

*Univ. of Maryland at Baltimore v. Peat, Marwick, Main & Co.*,
    996 F.2d 1534 (3d Cir. 1993)............................................................11

*US Airline Pilots Ass'n v. Awappa, LLC*,
    615 F.3d 312 (4th Cir. 2010) ............................................................11

*Walters v. McMahen*,
    684 F. 3d 435 (4th Cir. 2012) ......................................................19, 21

*Walters v. McMahen*,
    795 F. Supp. 2d 350 (D. Md. 2011), *aff'd* 684 F. 3d 435 (4th Cir. 2012) ..............................22

*West Town Bank & Tr. v. Forman*,
    2020 WL 6585655 (D.S.C. Nov. 10, 2020)..............................................11, 12, 19

*Witthohn v. Fed. Ins. Co.*,
    164 F. App'x 395 (4th Cir. 2006) ......................................................5

# TABLE OF AUTHORITIES
(continued)

Page

*Young v. City of Mount Ranier*,
238 F.3d 567 (4th Cir. 2001) ...................................................................................................7

**STATUTES, RULES & REGULATIONS**

18 U.S.C. § 1341 ...................................................................................................................10

18 U.S.C. § 1343 ...................................................................................................................10

18 U.S.C. § 1951 ..............................................................................................................10, 16

18 U.S.C. § 1951(b)(2) ...........................................................................................................16

18 U.S.C. § 1961(1) ...............................................................................................................10

18 U.S.C. § 1961 *et seq.* ..........................................................................................................5

18 U.S.C. § 1962(c) ......................................................................................................5, 10, 22

18 U.S.C. § 1962(d) ...........................................................................................................5, 22

Fed. R. Civ. P. 9(b) .................................................................................................7, 12, 14, 15

Fed. R. Civ. P. 12(b)(6) ...............................................................................................5, 7, 8, 9

Fed. R. Civ. P. 41(b) ................................................................................................................9

N.C. Gen Stat, § 1A-1 ..............................................................................................................9

## NATURE OF THE MATTER BEFORE THE COURT

This is a contractual dispute repackaged as a purported RICO violation. In 2013, PennyMac Loan Services, LLC ("PennyMac") purchased the mortgage of Brad Johnson and Elci Wijayaningsih on two parcels of land, one of which was improved with a residence. Pursuant to the mortgage terms, Johnson and Wijayaningsih were obligated to maintain hazard insurance coverage on the improvements. When they allowed the hazard coverage to lapse, PennyMac purchased insurance from Standard Guaranty Insurance Company ("SGIC"). This type of arrangement, commonly referred to as "lender placed insurance," permits lenders to ensure that loan collateral is adequately protected, and is a facet of every mortgage in the United States as an indispensable component of the secondary mortgage market.

Johnson and Wijayaningsih have seized upon the description of the encumbered property in their deed of trust, which fails to include the parcel of land containing the improvements, in an attempt to avoid maintaining hazard insurance on their property. PennyMac asserts that the description is erroneous and the result of a mutual mistake, inadvertence, or draftsman's error; Johnson and Wijayaningsih dispute this contention. Accordingly, in February 2020 PennyMac initiated an action in Forsyth County District Court (the "Forsyth County Action") to reform the deed of trust to include all property and improvements described in the appraisal report conducted at the time of loan origination.

From this simple contractual dispute, Johnson, who has been described by Chief Judge Harwell as "no stranger to court proceedings" whose "litigiousness stretches from the East Coast to the West Coast, from state trial courts to the United States Supreme Court," attempts to manufacture federal racketeering claims. In a Counterclaim filed in the Forsyth County Action, Johnson alleges that PennyMac and SGIC, as well as Assurant, Inc., a publically traded holding

company and the ultimate parent of SGIC, and two individual employees, engaged in a pattern of racketeering activity, including mail fraud, wire fraud, and extortion. After more than a year of procedural and merits litigation, those claims have been dismissed. Now, Johnson asserts identical RICO claims in this case.

Johnson already has litigated his claims against SGIC and Assurant (collectively, the "Assurant Defendants) in the Forsyth County Action; they are barred here by the doctrine of *res judicata*. Moreover, Johnson's RICO claims are entirely without merit. SGIC is in the business of providing lender placed insurance; that is all that Johnson alleges that it did here, and conducting one's own affairs is not conducting a RICO enterprise. Assurant is even more attenuated; it is a holding company that plays no part in the day-to-day operations of its indirect subsidiaries. In addition, (i) Johnson fails to adequately allege that the Assurant Defendants committed any RICO predicate acts, much less a pattern of racketeering activity; (ii) there is no conceivable causal connection between the alleged actions of the Assurant Defendants and any direct injury to Johnson; and (iii) Johnson fails to plead a case for RICO conspiracy.

For the foregoing reasons, SGIC and Assurant respectfully request that the Court dismiss all claims against them in the Complaint.[1]

## RELEVANT FACT AND PROCEDURAL HISTORY

Plaintiff Brad Johnson purchased two parcels of land in Brunswick County, North Carolina. Complaint, ECF No. 1 ¶¶ 6-8. One parcel ("Tract I") was improved with a residence, on which Johnson purchased hazard and flood insurance; the other parcel ("Tract II") was unimproved. *Id.* ¶¶ 7, 9. After the purchase of Tract II, Johnson combined Tract I and Tract II

---

[1] It is unclear whether Johnson has served SGIC as of the date of this filing. Regardless, all grounds for dismissal described herein apply equally to SGIC and Assurant.

(collectively, the "Property") for tax and assessment purposes. *Id.* ¶ 9. In June 2013, Johnson applied for a loan from Weststar Mortgage, Inc., and an appraisal was conducted on the combined Property, including the improved residence. *Id.* ¶¶ 10-11. Johnson's loan application was approved, and a Deed of Trust was recorded. *Id.* ¶ 22. Apparently, the description of the encumbered property on the Deed of Trust did not comport with the parties' intention, or the appraisal. *Id.* ¶¶ 11-21. Later in 2013, Johnson's Mortgage was sold to PennyMac. *Id.* ¶ 23.

Johnson's Deed of Trust requires that he maintain adequate insurance coverage on the improvements to the Property:

> 5. **Property Insurance.** Borrower shall keep the improvements now existing or hereby erected on the Property insured against loss by fire, hazards included within the term "extended coverage," and any other hazards including, but not limited to, earthquakes and floods, for which Lender requires insurance. This insurance shall be maintained in the amounts (including deductible levels) and for the periods that Lender requires. What Lender requires pursuant to the preceding sentences can change during the term of the Loan.
>
> ******
>
> If Borrower fails to maintain any of the coverages described above, Lender may obtain insurance coverage, at Lender's option and Borrower's expense. Lender is under no obligation to purchase any particular type or amount of coverage. Therefore, such coverage shall cover Lender, but might or might not protect Borrower, Borrower's equity in the Property, or the contents of the Property, against any risk, hazard or liability and might provide greater or lesser coverage than was previously in effect. Borrower acknowledges that the cost of the insurance coverage so obtained might significantly exceed the cost of insurance that Borrower could have obtained. Any amounts disbursed by Lender under this Section 5 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable with such interest upon notice from Lender to Borrower requesting payment.

Complaint Ex. VII § 5. Section 9 of the Deed of Trust ("Protection of Lender's Interest in the Property and Rights Under This Security Instrument") provides further that if Johnson, among other things, "fails to perform the covenants and agreements contained in this Security

Instrument," the Lender "may do and pay for whatever is reasonable or appropriate to protect Lender's interest in the Property and Lender's rights under this Security Instrument," including "protecting and/or assessing the value of the Property[.]"  *Id.* § 9.  In March 2019, Johnson recorded an "Instrument of Separation" with Brunswick County.  Complaint ¶ 32.

Johnson initially maintained hazard insurance coverage on the Property, but admits that coverage was later dropped.  Complaint ¶¶ 26, 31.  On or about May 10, 2019 and June 14, 2019, Johnson received correspondence informing him of his obligation to maintain acceptable insurance coverage on the Property, and that PennyMac would purchase coverage on the Property if Johnson did not do so.  Complaint Ex. XV.  That correspondence also notified Johnson that if he did not provide evidence of acceptable coverage, PennyMac would purchase lender-placed insurance for him, and that lender-placed insurance may be more expensive and provide less coverage that voluntary coverage he purchased on his own.  *Id.*  Finally, Johnson was "strongly encourage[d] to immediately purchase acceptable (Homeowners) Hazard Insurance Coverage on [his] own."  *Id.* at 5, 10.[2]  Ultimately, Johnson did not secure his own coverage, and hazard insurance was purchased by PennyMac through SGIC.  Complaint ¶ 36 and Ex. XVI.

Johnson disagrees that he is required to maintain hazard insurance coverage on the Property.  In August 2019, Johnson submitted separate complaints to the North Carolina Commissioner of Banks and the North Carolina Department of Insurance ("NCDOI") regarding PennyMac and SGIC, respectively, in which he asserted that the lender placed hazard coverage was improper because PennyMac did not have an insurable interest in the dwelling on which

---

[2] Johnson received similar correspondence in March 2020, informing him that the lender-placed insurance coverage on the Property was due to expire, and that it would be renewed if he did not provide evidence of acceptable coverage.  Complaint ¶¶ 48-49 and Exs. XXV and XXVI.

insurance coverage was placed.  Complaint ¶ 38.   In its response to Johnson's NCDOI complaint, SGIC indicated that PennyMac is the only party who can address any loan servicing concerns Johnson might have, including the issue of insurable interest, and that "[s]hould the loan record be updated to signify that the aforementioned lender placed policy was not necessary, a cancellation will occur and the premium will be refunded to PennyMac (for deposit into Mr. Johnson's escrow account)."  *Id.* Ex. XXII.

In January 2020, PennyMac commenced an action in Forsyth County District Court to reform Johnson's Deed of Trust to include both Tract 1 and Tract 2.  Complaint ¶ 44.[3]  The Forsyth County Action will resolve the entire dispute between Johnson and PennyMac.  If the North Carolina court reforms the deed of trust, PennyMac's right to secure lender-placed coverage on the Property will be undisputed.  Conversely, if the court declines to reform the deed of trust, SGIC has informed both Johnson and the NCDOI that it will flat cancel the coverage and refund the premiums.  Complaint Ex. XXII.

Notwithstanding the simple and straightforward nature of his disagreement with PennyMac, on or about February 21, 2020, Johnson filed a counterclaim/third party claim against, *inter alia*, PennyMac, SGIC, and Assurant, asserting purported violation of the Racketeer Influenced and Corrupt Organizations Act of 1970 ("RICO"), 18 U.S.C. § 1961 *et seq.*, in particular 18 U.S.C. § 1962(c) & (d), against all defendants, as well as claims for breach of contract and violation of the Fair Debt Collection Practices Act against PennyMac.  Johnson simultaneously

---

[3] When considering a Rule 12(b)(6) motion to dismiss, the Court may take judicial notice of and consider official public records, including court filings. *Witthohn v. Fed. Ins. Co.*, 164 F. App'x 395, 396-97 (4th Cir. 2006) (per curiam).  For ease of reference, PennyMac's Complaint to reform the Deed of Trust, currently pending in Forsyth County Superior Court, is attached hereto as Exhibit A.

removed the entire action to the Middle District of North Carolina. *PennyMac Loan Services, LLC. v. Johnson,* Case No. 20-cv-175 (M.D.N.C) (the "M.D.N.C. Action"), ECF Nos. 1-7. Johnson amended his initial counterclaim once as a matter of right. M.D.N.C. Action ECF No. 16. Judge Osteen subsequently remanded the M.D.N.C. Action to Forsyth County District Court, *PennyMac Loan Servs., LLC v. Johnson*, 2021 WL 861530, at *7 (M.D.N.C. Mar. 8, 2021), where it was subsequently transferred to the Forsyth County Superior Court. The operative Counterclaim in the Forsyth County Action—the First Amended Counterclaim filed in the M.D.N.C. Action— is attached hereto as Exhibit B (the "Forsyth County Counterclaim").[4]

After transfer of the Forsyth County Action to Forsyth County Superior Court, Johnson moved to further amend his Counterclaim; that motion, along with the counterclaim defendants' motions to dismiss the First Amended Counterclaim, were argued in the Forsyth County Action on April 26 and May 6, 2021. On May 14, 2021, the parties received notice from the Forsyth County Superior Court that (i) Johnson's motion for leave to amend his counterclaims would be denied, and (ii) Johnson's the counterclaims would be dismissed with prejudice, although no order has yet been entered. The Assurant Defendants will supplement this filing with the dismissal order on the Forsyth County Action when it is entered.

Not content to litigate in only one forum, Johnson filed the Complaint in this action on or about March 19, 2021. As to SGIC and Assurant, the Complaint makes the same allegations and asserts the same claim—a purported RICO violation regarding the placement of lender-placed insurance—as the Forsyth County Counterclaim.

---

[4] Johnson maintains that his initial Counterclaim, not the First Amended Counterclaim, is the operative pleading in the Forsyth County Action. With respect to this motion, the distinction is immaterial.

## ARGUMENT

### I.      Governing Legal Standards

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Atkinson v. Prestage*, 2016 WL 7131918, at *1 (D.S.C. Aug. 16, 2016) (cleaned up) (quoting *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009)). "A claim has facial plausibility when the pleaded factual content allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (citation omitted). "The facts alleged must be enough to raise a right to relief above the speculative level[.]" *Perkins v. South Carolina Cmty. Bank*, 2017 WL 121851, at *2 (D.S.C. Jan 1, 2017) (cleaned up), *citing Robinson v. Am. Honda Motor Co.*, 551 F.3d 218, 222 (4th Cir. 2009). Moreover, RICO claims based on alleged fraud must "satisfy Rule 9(b)'s requirement that averments of fraud be stated with particularity." *Menasco, Inc. v. Wasserman* 886 F.2d 681, 684 (4th Cir. 1989).

"While a complaint . . . does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 555 (2007) (cleaned up). "The court is not required to accept as true the legal conclusions set forth in a plaintiff's complaint[, and] the presence of a few conclusory legal terms does not insulate a complaint from dismissal under Rule 12(b)(6) when the facts alleged in the complaint cannot support the legal conclusion." *Belton v. W. Marine Inc.*, 2015 WL 7180519, at *2 (D.S.C. Nov. 13, 2015) (cleaned up), *citing Edwards v. City of Goldsboro*, 178 F.3d 231, 244 (4th Cir. 1999) and *Young v. City of Mount Ranier,* 238 F.3d 567, 577 (4th Cir. 2001). Similarly, while additional leeway is provided to a *pro se* plaintiff, "[t]he requirement of liberal construction

[] does not mean that the court can ignore a clear failure in the pleading to allege facts which set forth a claim cognizable in a federal district court." *Davis v. Harwell*, 2008 WL 4442604, at *2 (D.S.C. Sept. 25, 2008); *see also Giarratano v. Johnson*, 521 F.3d 298, 304 n.5 (4th Cir. 2008) (that a plaintiff proceeds *pro se* does not "undermine *Twombly's* requirement that a pleading contain more than labels and conclusions[.]") (cleaned up); *Howard v. Piggly Wiggly*, 2007 WL 840308, at *2 (D.S.C. Mar. 15, 2007) (noting that a "*pro se* Complaint is still subject to dismissal pursuant to Rule 12(b)(6)" and "[a] court may not construct the plaintiff's legal arguments for him").[5]

## II.     Johnson's RICO Claim is Barred by the Doctrine of Res Judicata

Johnson's RICO claims already have been deemed defective, and he is not permitted a second bite at the apple in this Court.  "[A] a principal purpose of the general rule of res judicata is to protect the defendant from the burden of relitigating the same claim in different suits[.]" *Keith v. Aldridge*, 900 F.2d 736, 740 (4th Cir. 1990).  When determining the preclusive effect of a state court judgment, the federal court applies the laws of the state from whence the judgment issued. *See In re McNallen*, 62 F.3d 619, 624 (4th Cir. 1995) ("In determining the preclusive effect of a state-court judgment, the federal courts must, as a matter of full faith and credit, apply the forum state's law of collateral estoppel.").  In North Carolina, application of the doctrine of res judicata requires three elements:

---

[5] No allowances should be made because Johnson is a *pro se* plaintiff.  In 2013, Chief Judge Harwell noted that Johnson "signs his submissions to the Court, representing that he has a law degree," just as he has done here. *Fitchett v. Wilson*, 2013 WL 5468389, at *4 n.11 (D.S.C. Sept. 30, 2013).  Chief Judge Harwell also described Johnson as "no stranger to court proceedings" whose "suits are countless" and whose "litigiousness stretches from the East Coast to the West Coast, from state trial courts to the United States Supreme Court." *Id.*

> First, there must be a final judgment on the merits in an earlier suit; second, the same cause of action must be involved; third, the parties from the earlier suit, or those standing in privity with those parties, must be involved.

*Du Phan v. Clinard Oil Co.*, 798 S.E.2d 812 (N.C. Ct. App. 2017) (citing *State ex rel. Tucker v. Frinzi*, 474 S.E.2d 127, 128 (N.C. 1996)).[6] All three elements are present here

First, in North Carolina, "[u]nless the court in its order for dismissal otherwise specifies, a dismissal under this section and any dismissal not provided for in this rule, other than a dismissal for lack of jurisdiction, for improper venue, or for failure to join a necessary party, operates as an adjudication upon the merits." N.C. Gen Stat, § 1A-1, Rule 41(b); *Estate of Means ex rel. Means v. Scott Elec. Co., Inc.*, 701 S.E.2d 294, 298 (N.C. App. Ct. 2010) ("Rule 41(b) provides that all dismissals, with certain exceptions, operate as an adjudication upon the merits unless the trial court specifies the dismissal is without prejudice.").[7] Here, the Forsyth County Superior Court specifically directed that the entire Forsyth County Counterclaim, including Johnson's RICO claims, be dismissed "with prejudice." Second, Johnson asserts the same RICO claims, involving the same alleged misconduct, against the Assurant Defendants in this case as in the Forsyth County Action. *Compare* Complaint, *with* Forsyth County Counterclaim. Third, Johnson sues the same corporate defendants—SGIC, Assurant, Inc., and PennyMac—here as he did in the Forsyth County

---

[6] The requirements to apply *res judicata* are the same in this Court. *See Providence Hall Assocs. Ltd. P'ship v. Wells Fargo Bank N.A.*, 816 F.3d 273, 276 (4th Cir. 2016) ("[T]here must be: (1) a final judgment on the merits in a prior suit; (2) an identity of the cause of action in both the earlier and the later suit; and (3) an identity of parties or their privies in the two suits.").

[7] *See also Palmetto Design Assocs., Inc. v. B G Framing Co., Inc.*, 2021 WL 1227086, at *2 (D.S.C. Apr. 1, 2021) ("Finally, courts have held that, unless otherwise specified, a dismissal for failure to state a claim under Rule 12(b)(6) is presumed to be both a judgment on the merits and to be rendered with prejudice.") (citing *Federated Dep't Stores, Inc. v. Moitie*, 452 U.S. 394, 399 n.3 (1981) ("The dismissal for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6) is a 'judgment on the merits.'")).

Action.  *Compare* Complaint ¶¶  2, 4-5, *with* Forsyth County Counterclaim ¶¶ 2, 5, 8.  Johnson's

RICO claims are barred by the doctrine of *res judicata*.

### III.    Johnson Fails to State a § 1962(c) RICO Claim

Johnson's RICO claims are irretrievably defective and should be dismissed even if the

Court permits him to relitigate them here.  RICO's § 1962(c) makes it unlawful "for any person

employed by or associated with any enterprise engaged in, or the activities of which affect,

interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of

such enterprise's affairs through a pattern of racketeering activity."  To state a claim for violation

of § 1962(c), Johnson must allege "(1) conduct (2) of an enterprise (3) through a pattern (4) of

racketeering activity." *Sedima, S.P.R.L. v. Imrex Co.*, 473 U.S. 479, 496 (1985). "Racketeering

activity" means acts indictable under certain enumerated criminal statutes, § 1961(1); Johnson

alleges violations of the federal mail and wire fraud statutes, 18 U.S.C. §§ 1341 and 1343, as well

as extortion pursuant to the Hobbs Act, 18 U.S.C. § 1951.  *See* Complaint ¶¶ 53.

### A.    The Assurant Defendants Conducted Their Own Affairs, Not Those of the Purported RICO Enterprise

Johnson fails to allege the Assurant Defendants' "conduct" of the affairs of the purported

"PennyMac Association-in-Fact RICO Enterprise," as opposed to their own affairs.  "Mere

association with an enterprise does not violate § 1962(c)."  *In re Ins. Brokerage Antitrust Litig.*,

618 F.3d 300, 370 (3d Cir. 2010).  In order to be liable under RICO, a defendant "must have some

part in directing [the enterprise's] affairs" and must "participate in the operation or management

of the enterprise itself." *Reves v. Ernst & Young*, 507 U.S. 170, 184-85 (1993). RICO liability

"depends on showing that the defendants conducted or participated in the conduct of the 'enterprise

affairs,' not just their own affairs." *Id.* at 185 (emphasis in original).  RICO "does not cover all

instances of wrongdoing. Rather, it is a unique cause of action that is concerned with eradicating organized, long-term, habitual criminal activity." *West Town Bank & Tr. v. Forman*, 2020 WL 6585655, at *4 (D.S.C. Nov. 10, 2020) (quoting *US Airline Pilots Ass'n v. Awappa, LLC*, 615 F.3d 312, 317 (4th Cir. 2010) (internal quotation marks omitted)).  Accordingly, courts must "exercise caution to ensure that RICO's extraordinary remedy does not threaten the ordinary run of commercial transactions[.]" *Id.* (cleaned up); *see also AARP v. Am. Fam. Prepaid Legal Corp.*, 604 F. Supp. 2d 785, 796 (M.D.N.C. 2009) ("Simple contractual relationships are not ordinarily the stuff of which RICO enterprises are made.").

Even if Johnson had properly alleged the existence of a "PennyMac Association-in-Fact RICO Enterprise," he has not alleged that the Assurant Defendants operated or managed that purported enterprise, as opposed to simply engaging in their own affairs.  The Complaint has alleged nothing more than SGIC (i) contracted with PennyMac to provide lender-placed insurance coverage and related services, and (ii) responded to an inquiry from the North Carolina Department of Insurance.[8]  *See* Complaint ¶¶ 41, 48.  This describes SGIC's regular services and business activities, as Johnson himself alleges them to be, not the operation of a criminal RICO enterprise. *See id.* ¶ 4 ("[SGIC] is in the business of providing forced, lender-placed insurance exclusively to PennyMac.").  As one court noted, "simply because one provides goods or services that ultimately benefit the enterprise does not mean that one becomes liable under RICO as a result." *Univ. of Maryland at Baltimore v. Peat, Marwick, Main & Co.*, 996 F.2d 1534, 1539 (3d Cir. 1993); *see*

---

[8] There are no factual assertions supporting any wronging by Assurant.  Complaint, *passim*.  Nor could there be any such plausible allegations; Assurant is a holding company, and does not engage in the business of insurance.  *Roberts v. Wells Fargo Bank, N.A.,* 2013 WL 1233268, at *6-7 (S.D. Ga. Mar. 27, 2013) (holding that Assurant, Inc. "is a holding company and, as such, has limited direct operations of its own" and noting that Assurant does not sell insurance products).

*also Allstate Ins. Co. v. Weir*, 2008 WL 4877047, at *4-5 (E.D.N.C. Nov. 10, 2008) (declining to find that defendants who allegedly submitted false insurance claims participated in the operation and management of the purported enterprise). Tellingly, the "racketeering" practices the Assurant Defendants are alleged to have committed—supplying lender-placed insurance and related services pursuant to the contract with PennyMac, and responding to state insurance department inquiries—could and would be carried out in the same fashion with or without connection to a RICO enterprise, and such contractual relationships within "the ordinary run of commercial transactions." *Forman*, 2020 WL 6585655, at *4

### B.    No Pattern of Racketeering Activity is Plausibly Alleged

#### 1.    The Assurant Defendants Did Not Engage in Any Racketeering Activity

Johnson alleges that the Assurant Defendants committed mail and wire fraud, Complaint ¶ 74, and extortion, *id.* ¶ 76, as the predicate acts for his RICO claim. Predicate acts must be plausibly pled, and "[a] claim is facially plausible if the plaintiff provides enough factual content to enable the court to reasonably infer that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (citation omitted). In addition, RICO claims based on alleged fraud must "satisfy Rule 9(b)'s requirement that averments of fraud be stated with particularity." *Menasco*, 886 F.2d at 684. The Complaint fails to satisfy any of those requirements.

#### (a)    Johnson has not sufficiently alleged mail or wire fraud

"A plaintiff asserting a RICO claim predicated on mail or wire fraud must show both (1) a scheme disclosing an intent to defraud and (2) the mails or interstate wires were used in furtherance of the scheme." *Life Funding Options, Inc. v. Blunt*, 2019 WL 1052335, at *5 (D.S.C. Jan. 30, 2019) (quoting *Chisolm v. TranSouth Fin. Corp.,* 95 F.3d 331, 336 (4th Cir. 1996)). Johnson alleges three instances of mail or wire fraud as to the Assurant Defendants:  (i)  two separate

12

communications, on August 30 and September 26, 2019, in which the Assurant Defendants "defrauded" the North Carolina Insurance Commission by stating that Dr. Johnson was required to maintain hazard insurance on his property, Complaint ¶¶ 41, 74; and (ii) a communications dated March 2, 2020, in which the Assurant Defendants "defrauded" Johnson by stating that he was required to maintain hazard insurance on his property. *Id.* ¶¶ 48, 74. None of these communications constitute mail or wire fraud.

First, when Johnson submitted his complaint to the Department of Insurance, he identified SGIC as his insurer, and did not mention Assurant. *See* Complaint Ex. XIX, ECF No. 1-19. Similarly, SGIC alone provided a response to the Department. Complaint Ex. XXII, ECF No. 1-22 ("Please accept this as Standard Guaranty Insurance Company's formal response[.]"). There are *no* "false or misleading" statements or other actions of any kind attributed to Assurant that could form the basis for any predicate act, and certainly none that are stated "with particularity." *Menasco*, 886 F.2d at 684.

Second, although Johnson disagrees with SGIC's response to the Department of Insurance, he does not plausibly allege how a communication with a state agency could have either the purpose or effect of defrauding him. There simply is insufficient "factual content" or specificity for the Court to infer that SGIC committed wire or mail fraud. *Iqbal*, 556 U.S. at 678; *Johnson v. Pope*, 2013 WL 6500752, at *2 (E.D.N.C. Dec. 11, 2013) (dismissing fraud-based RICO claims by Johnson and noting that "[w]hile plaintiffs have recited the elements of their cause of action, nothing alleged in their complaint would allow the court to draw the reasonable inference that these defendants are liable for RICO violations").[9]

---

[9] Johnson would fare no better if he attempts to cast lender-placed insurance letters he received as the basis for mail and wire fraud predicate acts. *See* Complaint ¶¶ 33, 36, 49. Nothing in that

Third, the essence of Johnson's RICO mail and wire fraud claim is that defendants misstated PennyMac's contractual rights relating to its security interest in his property.  RICO and the federal mail and wire fraud statutes, however, do not have unlimited application, and courts in the Fourth Circuit "will not lightly permit ordinary business contract or fraud disputes to be transformed into federal RICO claims." *Flip Mortg. Co. v. McElhone*, 841 F.2d 531, 538 (4th Cir. 1988); *see also Al-Abood ex rel. Al-Abood v. El-Shamari*, 217 F.3d 225, 238 (4th Cir. 2000) (advising caution about basing RICO claims on mail or wire fraud "in order to "preserve a distinction between ordinary or garden-variety fraud claims").  Here, the communications from PennyMac and SGIC simply advise that Plaintiffs did not provide evidence of insurance as required by the Mortgage, and that if no evidence of coverage is provided, PennyMac would purchase coverage as also provided in the Mortgage.  SGIC simply issued that insurance coverage, and advised the regulator that if it were later determined that Plaintiffs position with PennyMac was vindicated, the SGIC coverage would be cancelled and all premium refunded.

While Johnson attempts to portray defendants' statements as a "false narrative" that "defrauded" him, such statements "even if wrongful as a matter of contract or other state law," do not qualify as deceptive conduct actionable under RICO. *Kolar v. Preferred Real Est. Invs., Inc.*, 361 F. App'x 354,  363 (3d Cir. 2010).  In *Kolar*, the plaintiff alleged the defendants "falsely asserted" their contractual rights, *id.*, just as Johnson claims here.  *See, e.g.,* Complaint ¶ 74-75 (alleging that the Assurant Defendants "defrauded" him by "representing that Johnson was required to maintain hazard insurance on his property).  The Third Circuit held that Kolar's

---

correspondence was false or misleading, or attempted to induce Johnson to secure lender placed insurance—just the opposite—and Johnson fails to allege with the requisite Rule 9(b) particularity any facts to support his fraud-based claims.  *Menasco*, 886 F.2d at 684.

allegations "set forth disputes sounding in contract," and "Kolar cannot successfully transmute them into RICO claims by simply appending the terms 'false' and 'fraudulent.'" *Id.* at 363-64 ("Kolar attempts to characterize these contract-based claims of right as 'false' and 'fraudulent,' but we are unpersuaded."). Just as in *Kolar*, an allegation that the defendants here incorrectly represented or failed to disclose defendants' asserted contractual authority to place and charge for hazard insurance, even if "possibly amounting to a breach of contract, contains no deception that would bring it within the purview of the mail [or wire] fraud statute." *Kehr Packages, Inc. v. Fidelcor, Inc.*, 926 F.2d 1406, 1417 (3d Cir. 1991) ("the mail fraud statute does not reject all business practices that do not fulfill expectations, nor does it taint every breach of a business contract. Its condemnation of a scheme or artifice to defraud implicates only plans calculated to deceive.") (internal quotation marks omitted). Notably, Johnson also has asserted a breach of contract claims against PennyMac based on the same allegations underpinning his RICO claim.

At its heart, the RICO statute prohibits schemes to defraud. Even if Johnson's allegations transcend supposed misrepresentations regarding PennyMac's security interest in his property, the Complaint does not plausibly allege any underlying scheme to defraud with the particularity required by Rule 9(b). Rather, it generally describes a disagreement regarding a discrepancy between the collateral appraised in connection with the mortgage origination, Complaint ¶ 11 and Ex. IV, and the collateral ultimately included in the Deed of Trust. Complaint ¶¶ 16-22; *see also* Exhibit A ¶ 28 ("As a result of the mutual mistake, inadvertence or mistake of the draftsman, the legal description attached to Deed of Trust does not reflect the true intentions of the parties as of the date of execution of the Deed of Trust."). Moreover, no document or communication mentioned in or appended to the Complaint could reasonably be interpreted to be part of a plot to lure Johnson, or any other unsuspecting borrower, into buying lender-placed hazard insurance. To

the contrary, the defendants repeatedly advised Johnson that he should purchase his own coverage, that he would not financially benefit from the lender-placed coverage, and that the anticipated lender-placed insurance would be a *poor* deal.  This is not evidence of a scheme to defraud.

### (b)     Johnson's extortion theory fails

Johnson's claim that the Assurant Defendants committed "extortion" fares no better.  The Hobbs Act defines extortion, in pertinent part, as, "the obtaining of property from another, with his consent, induced by wrongful use of actual or threatened force, violence, or fear[.]"  18 U.S.C. § 1951(b)(2).  "To sufficiently plead a violation of extortion under . . . 18 U.S.C. § 1951, a plaintiff must allege that defendant attempted to obtain the plaintiffs [sic] property, with plaintiff's consent, where such consent was induced by the wrongful use of actual or threatened force, violence or fear."  *North Carolina Supported Emp. v. North Carolina Dep't of Health & Hum. Servs.*, 2010 WL 4696919, at *12 (E.D.N.C. Aug. 21, 2010), *adopted in part and rejected in part by* 2010 WL 4696556 (E.D.N.C. Nov. 12, 2010) (adopting report and recommendations on the merits but declining to dismiss with prejudice). Johnson asserts that the Assurant Defendants "each used a threatened fear of economic loss, in seeking to induce Dr. Johnson's consent to buy hazard insurance on Lots 16 & 18, even though Assurant and SG Insurance each knew that Dr. Johnson was under no legal obligation to do so."  Complaint ¶ 76.

This is not extortion.  Johnson does not allege that Assurant (or any other defendant) attempted to obtain his property.  To the contrary, the defendants urged Johnson to purchase voluntary hazard insurance from a carrier of his choice and thereby ***avoid*** having lender-placed coverage on his property.  *See* Complaint ¶ 36 and Ex. XV; ¶ 39 and Ex. XVI; ¶ 49 and Ex. XXV;

¶ 50 and Ex. XXVI.[10]   This is not, as Johnson claims, an attempt by the Assurant Defendants to obtain "from Dr. Johnson money or control over Dr. Johnson's real property" – it is the exact opposite.   Telling Johnson that he would be better off without lender-placed insurance on his property is not attempting to extort him.   *See also Scheidler v. Nat'l Org. for Women, Inc.*, 537 U.S. 393, 405 (2003) (holding that there was no claim for extortion when the defendant did not "pursue or receive" the plaintiff's property; "[t]o conclude that such actions constituted extortion would effectively discard the statutory requirement that property must be obtained from another, replacing it instead with the notion that merely interfering with or depriving someone of property is sufficient to constitute extortion").[11]

---

[10] Johnson describes correspondence in which the Assurant Defendants informed him that (i) his lender-placed insurance coverage was scheduled to renew, and (ii) informed him that he could avoid that renewal by providing proof of voluntary coverage.   Complaint ¶ 48; Ex. XXV.   The other purportedly "extortionate" letters to which Johnson refers contain similar statements.   *See* Complaint ¶ 33 and Ex. XV; ¶ 36 and Ex. XVI; ¶ 49 and Ex. XXVI.   Those letters reminded Johnson of his obligation to keep his property insured, and asked that he provide proof of coverage. Complaint Ex. XV at 2, 7; Ex. XVI at 2, Ex. XXVI at 2.   They also notified Johnson that if he did not provide evidence of acceptable coverage, PennyMac would purchase lender-placed insurance for him, and that lender-placed insurance may be more expensive and provide less coverage that voluntary coverage he purchased on his own.   *Id.*   Finally, they "strongly encourage[d him] to immediately purchase acceptable (Homeowners) Hazard Insurance Coverage on [his] own." Complaint Ex. XV at 5, 10; Ex. XXVI at 5.

[11] To the extent Johnson may seek to recast the predicate act of extortion as the act of placing lender-placed insurance coverage, his claim would make even less sense.   There are no plausible factual allegations identifying any "actual or threatened force, violence, or fear" in connection with LPI placements.   *See Morris v. Green Tree Servicing, LLC*, 2015 WL 4113212, at *13 (D. Nev. July 8, 2015) (holding that placing lender placed insurance does not constitute a predicate act of extortion under the Hobbs Act).   Moreover, any such claim would be foreclosed by PennyMac's belief that the Deed of Trust properly includes both Tract I and Tract II as collateral, *see* Exhibit A, and that PennyMac is entitled to require that Johnson maintain adequate insurance on his property.   *Miller v. Dogwood Valley Citizen's Ass'n, Inc.*, 2008 WL 3992350, at *7 (W.D. Va. Aug. 28, 2008) (holding that there was no Hobbs Act violation when a defendant took legal action to obtain that which it "legitimately believed" it was entitled).

Johnson has made no plausible allegation that the Assurant Defendants, or any defendant, "attempted to obtain his property."

## 2.    There Was No Pattern of Racketeering Activity

"To establish a pattern of racketeering activity, the plaintiff must show that the predicate acts are related and that they 'amount to or pose a threat of continued criminal activity.'" *GE Inv. Priv. Placements Partners II v. Parker*, 247 F.3d 543, 549 (4th Cir. 2001) (quoting *H.J. Inc. v. Nw. Bell Tel. Co.,* 492 U.S. 229, 249–50 (1989)). "Continuity may be established where, for example, the 'related predicates themselves involve a distinct threat of long-term racketeering activity,' or where the predicate acts 'are part of an ongoing entity's regular way of doing business . . . or of conducting or participating in an ongoing and legitimate RICO enterprise.'" *Id.* (quoting *H.J. Inc.*, 492 U.S. at 242-43). Since Johnson has not sufficiently pled *any* RICO predicates, be cannot have established a pattern of racketeering activity.

Moreover, while Johnson claims that defendants' actions constitute a "general business practice" and that others have been treated similarly, Complaint ¶¶ 46, 78, he asserts no facts that support this conclusion. Instead, he implausibly claims that a smattering of eight lawsuits over eight years involving legal disputes between PennyMac and its borrowers constitutes a pattern of racketeering activity. *Id.* ¶ 46. Neither SGIC nor Assurant were parties to these lawsuits, and there is nothing to explain how these lawsuits connect SGIC and Assurant to either "extortion" or an alleged pattern of racketeering activity.[12]

_____

[12] Johnson effectively demonstrates that courts routinely reform security instruments to effectuate the intention of the parties. *See Pennymac Loan Servs. v. Denman,* 2017 Ohio Misc. LEXIS 14952 (February 9, 2017) (reforming the granting clause of the mortgage due to mutual mistake); *Pennymac Loan Servs. v. Gamble*, 2017 Ohio Misc. LEXIS 19522 (September 1, 2017) (reforming the legal description of the property due to scrivener's error); *Pennymac Loan Servs. v. Infante,* 2017 Ohio Misc. LEXIS 5351 (December 14, 2017) (reforming the legal description of the

"RICO treatment is reserved for conduct whose scope and persistence pose a special threat to social wellbeing." *Parker*, 247 F.3d at 551 (quotations and citation omitted).  No such threat exists or has been alleged here.  Simply put, Johnson believes that PennyMac is incorrect about the security interest it possesses in his Property, and that he is not required to maintain hazard insurance on his home.  He describes a singular contractual dispute, not a "special threat to social wellbeing," and cannot bootstrap this disagreement into a "pattern of racketeering activity" by parroting elements from the RICO statute without alleging plausible facts to support his allegations.  *Twombly,* 550 U.S. at 555 (cleaned up) (noting that "a formulaic recitation of the elements of a cause of action will not do").  "The Fourth Circuit has consistently held that RICO's pattern requirement is not satisfied where, as here, the alleged scheme is narrowly focused on one goal and will end when and if that goal is accomplished." *Dtex, LLC v. BBVA Bancomer, S.A.*, 405 F. Supp. 2d 639, 649 (D.S.C. 2005); *Forman*, 2020 WL 6585655, at *5 (holding that "alleged acts of fraud" that are "isolated" do not establish a pattern of racketeering activity).

### C.    Johnson Has Not And Cannot Plead That Predicate Offenses Caused His Injury

To establish that an injury to business or property was "by reason of" a RICO violation, a plaintiff must show that the predicate offenses were both the "but for" and proximate cause of the alleged injury. *Bridge v. Phoenix Bond & Indem. Co.*, 553 U.S. 639, 654 (2008); *Walters v. McMahen*, 684 F.3d 435, 444 (4th Cir. 2012).  RICO causation requires a "direct relation" between the injury asserted and the conduct alleged. *Bridge*, 553 U.S. at 654; *Hemi Grp., LLC v. City of*

---

property to effectuate the intention of the parties).  Such disputes are routine contract actions, not extortion.  *See Miller*, 2008 WL 3992350, at *7 (W.D. Va. Aug. 28, 2008) (holding that there was no Hobbs Act violation when a defendant took legal action to obtain that which it "legitimately believed" it was entitled).

*New York*, 559 U.S. 1, 12 (2010) ("Our precedents make clear that in the RICO context, the focus is on the directness of the relationship between the conduct and the harm."). In other words, "RICO causation requires a proximity of statutory violation and injury such that the injury is sequentially the direct result—generally at 'the first step' in the chain of causation." *Slay's Restoration, LLC v. Wright Nat'l Flood. Ins. Co.*, 884 F.3d 489, 494 (4th Cir. 2018); *Sun v. Bluffton Police Dep't.*, 2010 WL 3786541, at *3 (D.S.C. July 21, 2010) ("[I]t is clear that a civil RICO complaint is vulnerable to a motion to dismiss if it fails to allege . . . an adequate causal nexus between that injury and the predicate acts of racketeering activity alleged.") (cleaned up; ellipsis in original); *Page v. Select Portfolio Servicing, Inc.*, 2013 WL 4679428, at *4 (M.D.N.C. Aug. 30, 2013) (a plaintiff "must allege a direct nexus between the RICO predicate acts and [his] alleged injury").

Johnson cannot establish the required proximate cause; indeed, his entire Complaint refutes any notion that the alleged predicate acts caused his injuries at all. As an initial matter, all three of the Assurant Defendants' "fraudulent" predicate acts took place *after* lender-placed insurance was placed on Johnson's property. *Compare* Complaint ¶ 36 (LPI placed in July 2019) *with* ¶¶ 41, 48, 74 (purported fraudulent acts took place in August 2019, September 2019, and March 2020). Actions that took place after a purported harm cannot be either the "but for" or proximate cause of Johnson's alleged injury. *Dennis v. Gen. Imaging, Inc.*, 918 F.2d 496, 511 (5th Cir. 1990) ("A mailing occurring after completion of the allegedly fraudulent scheme cannot support a mail fraud allegation because it does not contribute to completion of the fraud."); *Iqbal*, 556 U.S. at 678 (requiring a plaintiff to please "enough factual content" to make a claim plausible). In addition, Johnson has not alleged and cannot allege any "direct relation" between the Assurant Defendants' correspondence with the North Carolina Department of Insurance and any injury to Johnson's "business or property." Nor is it plausible that SGIC's correspondence to the Department of

Insurance correspondence was the cause either the "but for" or proximate cause of Johnson's alleged injury.

The same is true for the other supposed predicate acts identified in the Complaint. *See generally* Complaint ¶¶ 29-49. Lender-placed insurance was placed on Johnson's property because he declined to secure voluntary coverage, as he was required to do pursuant to the terms of his Deed of Trust. That is both the "but for" and proximate cause of Johnson's "injury," not any correspondence or other communication sent to him; nothing any defendant may have said to Johnson played any role in the placement of coverage. *Hemi Grp.*, 559 U.S. at 11 (finding plaintiff's allegations of "conduct directly causing the harm was distinct from the conduct giving rise to the fraud"); *c.f. Circeo-Loudon v. Green Tree Servicing., LLC*, 2014 WL 4219587 (S.D. Fla. Aug. 25, 2014) (holding in connection with lender-placed insurance claims related to lender-placed insurance that "[t]he direct cause of the alleged injury here is the LPI placement, not the [alleged predicate acts]").

"This deficiency in [Johnson's] claim becomes obvious by removing the [predicate acts] from the [] narrative." *Walters*, 684 F.3d at 444. If Johnson failed to maintain acceptable insurance coverage, the injury about which he complains — the placement of lender-placed insurance coverage — would have been exactly the same *even the defendants never corresponded with him or North Carolina regulators*. Put another way, nothing that Johnson did in response to any communication from any defendant led to the placement of lender-placed insurance. "Therefore, as this exercise plainly illustrates, the [mail and wire fraud and extortion allegations, even if true] cannot be a proximate cause of the plaintiff['s] injury, because there is no direct relationship between the injury asserted and the predicate act[s] alleged." *Id.* As the Fourth Circuit previously has held in language equally applicable to this case, "Plaintiff does not allege that the three letters

cited contributed to the defendants' efforts to separate him from his money and the evidence demonstrates that they did not do so." *Dennis*, 918 F.2d at 511. Johnson's § 1962(c) claim should be dismissed.

## IV.   Johnson Fails to State a Claim For RICO Conspiracy

RICO § 1962(d) makes it unlawful "to conspire to violate" § 1962(c). To plead claim for RICO conspiracy, a plaintiff must allege that "each defendant agreed that another coconspirator would commit two or more acts of racketeering." *United States v. Pryba,* 900 F.2d 748, 760 (4th Cir. 1990). Johnson's failure to state a cognizable claim pursuant to § 1962(c) is necessarily fatal to the adjunct § 1962(d) claim. "Because the pleadings do not state a substantive RICO claim . . . Plaintiffs' RICO conspiracy claim fails as well." *Parker*, 247 F.3d at 551 n.2. Moreover, to plead a claim for violation of § 1962(d), Johnson must "adequately plead agreement to the conspiracy on the part of each defendant . . . to support a conspiracy conviction under § 1962(d), each defendant must agree that he or another would violate § 1962(c)." *Walters v. McMahen*, 795 F. Supp. 2d 350, 356 (D. Md. 2011), *aff'd* 684 F.3d 435 (4th Cir. 2012) (quoting *Pryba,* 900 F.2d at 760). Here, there are no allegations in the Complaint to support any suggestion that either SGIC or Assurant entered into such agreement.

**[REMAINDER OF PAGE INTENTIONALLY LEFT BLANK]**

## CONCLUSION

For the foregoing reasons, Count I of Johnson's Complaint should be dismissed, with prejudice, as to Standard Guaranty Insurance Company and Assurant, Inc.[13]

This 24th day of May, 2021.

NELSON MULLINS RILEY & SCARBOROUGH LLP

By:  s/ B. Rush Smith III
     B. Rush Smith III
     Federal Bar. No. 5031
     E-Mail: rush.smith@nelsonmullins.com
     Thomas T. Hydrick
     Federal Bar No. 13322
     E-Mail: thomas.hydrick@nelsonmullins.com
     1320 Main Street / 17th Floor
     Post Office Box 11070 (29211-1070)
     Columbia, SC 29201
     (803) 799-2000

FAEGRE DRINKER BIDDLE & REATH LLP

     W. Glenn Merten (*pro hac vice* forthcoming)
     1500 K Street, NW
     Suite 1100
     Washington, D.C. 20005
     (202) 842-8800
     glenn.merten@faegredrinker.com

     Attorneys for Defendants Assurant, Inc. and
     Standard Guaranty Insurance Company

---

[13] Pursuant to Local Civil Rule 7.04, a full explanation of this motion and opposition is provided herein and, therefore, Defendants are not filing a separate supporting memorandum.

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on May 24, 2021, the foregoing was filed with the Clerk of Court using the CM/ECF system who will provide notices of the filing to registered participants.

I further certify that on May 24, 2021, a true and correct copy of the foregoing was sent via United States Mail, postage prepaid, to the following non CM/ECF participants:

Brad Johnson
8669 Laure Woods Drive
Myrtle Beach, SC  29588

This 24th day of May, 2021.

/s/ B. Rush Smith III
B. Rush Smith III