UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH CAROLINA
FLORENCE DIVISION

| | |
|---|---|
| BRAD R. JOHNSON, ) | Civil Action No. 4:21-cv-0815-TLW-TER |
| ) | |
| Plaintiff, ) | |
| ) | |
| -vs- ) | |
| ) | **REPORT AND RECOMMENDATION** |
| ) | |
| PENNYMAC LOAN SERVICES, LLC, ) | |
| STANDARD GUARANTY INSURANCE ) | |
| COMPANY, and ASSURANT, INC, ) | |
| ) | |
| Defendant. ) | |
| _____ ) | |

## I.   INTRODUCTION

Plaintiff, who is proceeding pro se, brings this action alleging claims under the Racketeer Influenced and Corrupt Organizations Act (RICO), 18 U.S.C. §§ 1961 et seq., the Fair Debt Collection Practices Act (FDCPA), 15 U.S.C. § 1692 et seq., and the Real Estate Settlement Procedures Act (RESPA), 12 U.S.C. § 2607, et seq., as well as a state law claim for breach of contract accompanied by fraud.  Presently before the Court are Defendant PennyMac Loan Services, LLC's (PennyMac) Motion to Dismiss (ECF No. 14) and Defendants Standard Guaranty Insurance Company (SGIC) and Assurant, Inc.'s Motion to Dismiss (ECF No. 23).  Because he is proceeding pro se, Plaintiff was advised pursuant to Roseboro v. Garrison, 528 F.3d 309 (4th Cir. 1975), that a failure to respond to Defendants' motions could result in dismissal of his Complaint.  Plaintiff filed responses.  All pretrial proceedings in this case were referred to the undersigned pursuant to the provisions of 28 U.S.C. § 636(b)(1)(A) and (B) and Local Rule 73.02(B)(2)(d), DSC.

## II.   FACTUAL ALLEGATIONS

Plaintiff purchased Lots 16 and 18, Block 186, Section N-6, Long Beach (now Oak Island),

North Carolina. Compl. ¶ 6. Lots 16 and 18 were improved with a residence. Compl. ¶ 7. Plaintiff purchased homeowners and flood insurance coverage for the house located on Lots 16 and 18 from Farm Bureau Insurance Company. Compl. ¶ 7. Subsequently, Plaintiff purchased Lots 13, 15 and 17, Block 186, Section N-6, Long Beach (now Oak Island), North Carolina. Compl. ¶ 8. Lots 13, 15 and 17 are vacant lots. Compl. ¶ 9. Plaintiff later combined all Lots (collectively, the Property) for tax and assessment purposes. Compl. ¶ 9. In June 2013, Plaintiff applied for a loan from Weststar Mortgage, Inc., and an appraisal was conducted on the combined Property, including the improved residence. Compl. ¶¶ 10-11. Johnson's loan application was approved (2013 Loan), and a Deed of Trust was recorded. Compl. ¶ 22. The Deed of Trust purports to encumber only Lots 13, 15 and 17, i.e., the vacant lots. Compl. ¶ 20. Later in 2013, the Weststar Mortgage was sold to PennyMac. Comp. ¶ 23.

From the inception of the 2013 Loan until September 20, 2017, first Weststar and then PennyMac created and maintained an escrow account and used the escrowed funds to pay for homeowners and flood insurance coverage for the house. Compl. ¶¶ 10, 26. On September 20, 2017, Plaintiff called PennyMac and requested that it discontinue paying for the homeowners and flood insurance because it had a lien on vacant land only. Compl. ¶¶ 10, 26. PennyMac's representative responded that he would look into the situation. Compl. ¶¶ 26. In April of 2018, PennyMac paid to renew the homeowner's insurance. Compl. ¶ 28. Subsequently, PennyMac informed Plaintiff that it would close the escrow account but he was still required to pay for property insurance. Compl. ¶ 29.

In September of 2018 and after, Plaintiff corresponded with PennyMac, who allegedly told him that if he separated Lots 16 and 18 (those on which the house is located) from Lots 13, 15, and

17 (the vacant lots), it would not require him to maintain property insurance coverage on the vacant land, but would continue to require flood insurance. Compl. ¶ 31. On March 22, 2019, Plaintiff separated the vacant lots from Lots 16 and 18. Compl. ¶ 32.

In May and June of 2019, PennyMac sent Plaintiff letters informing him that his homeowners insurance had expired and requested that he purchase homeowners' insurance. Plaintiff stated that he could not purchase homeowner's insurance for vacant land. Compl. ¶¶ 34-35. Therefore, PennyMac purchased lender-placed homeowners' insurance coverage for the home from Defendant SGIC and funded the insurance through the 2013 Loan's escrow account, resulting in an increased monthly payment. Compl. ¶¶ 36-37.

On or about August 20, 2019, Plaintiff wrote a complaint letter regarding PennyMac and SGIC to the North Carolina Commissioner of Banks and the North Carolina Department of Insurance wherein he asserted that the lender placed hazard coverage was improper because PennyMac did not have an insurable interest in the dwelling on which insurance coverage was placed. Compl. ¶ 38. SGIC responded to the complaints by stating that PennyMac is the only party who can address any loan servicing concerns Plaintiff might have, including the issue of insurable interest, and that "[s]hould the loan record be updated to signify that the aforementioned lender placed policy was not necessary, a cancellation will occur and the premium will be refunded to PennyMac (for deposit into [Plaintiff]'s escrow account)." Compl. Ex. 22 (ECF No. 1-22). PennyMac responded with a letter explaining that (i) while the Deed of Trust was prepared with Lots 13, 15 and 17 only in the legal description, Johnson's loan application states that the purpose of the loan was to refinance a then-existing loan encumbering the house on Lots 16 and 18, and (ii) PennyMac had made a title insurance claim to resolve the drafting error in the Deed of Trust's legal description. Compl. Ex. 21

(ECF No. 1-21). In addition, PennyMac also stated that it would not seek payment for homeowners insurance premiums from Plaintiff until the title issue was resolved and that it would remove the insurance premium from Plaintiff's escrow account. Compl. Ex. 21 (ECF No. 1-21).

In January 2020, PennyMac commenced an action in Forsyth County District Court to reform Plaintiff's Deed of Trust to include Lots 13, 15, 16, 17, and 18. Complaint ¶ 44. On February 21, 2020, Plaintiff filed a counterclaim/third party claim against PennyMac, SGIC, and Assurant, asserting violations of the RICO, in particular 18 U.S.C. § 1962(c) & (d), against all defendants, as well as claims for breach of contract and violation of the FDCPA against PennyMac, and removed the entire action to the Middle District of North Carolina. PennyMac Loan Services, LLC. v. Johnson, Case No. 20-cv-175 (M.D.N.C). Thereafter, Plaintiff amended his initial counterclaim. The Middle District of North Carolina remanded the case back to Forsyth County District Court, PennyMac Loan Servs., LLC v. Johnson, 2021 WL 861530, at *7 (M.D.N.C. Mar. 8, 2021), where it was subsequently transferred to the Forsyth County Superior Court.

Defendants moved to dismiss the counterclaims and Plaintiff moved to further amend his counterclaims, to which Defendants objected. On May 24, 2021, the Forsyth County Superior Court denied Plaintiff's motion for leave to amend his counterclaims and dismissed with prejudice Plaintiff's counterclaims. Forsyth County Order (ECF No. 30-1).

### III.    PENNYMAC'S MOTION TO DISMISS

PennyMac moves to dismiss Plaintiff's claims against it pursuant to Fed.R.Civ.P. 12(b)(1), 12(b)(2), and 12(b)(6).

#### A.    Personal Jurisdiction

PennyMac first argues that this court lacks personal jurisdiction over it because it has no

offices in South Carolina and it lacks the minimum contacts with the state necessary to be subjected to the jurisdiction of this court. Whether a court has personal jurisdiction over a defendant is properly challenged under Fed.R.Civ.P. 12(b)(2). When a court's personal jurisdiction is challenged, the burden is on the plaintiff to establish that a ground for jurisdiction exists. Combs v. Bakker, 886 F.2d 673, 676 (4th Cir. 1989). When the court resolves the motion on written submissions (as opposed to an evidentiary hearing), the plaintiff need only make a "prima facie showing of a sufficient jurisdictional basis." Id. However, the plaintiff's showing must be based on specific facts set forth in the record. Magic Toyota, Inc. v. Southeast Toyota Distributors, Inc., 784 F. Supp. 306, 310 (D.S.C. 1992). The court may consider the parties' pleadings, affidavits, and other supporting documents but must construe them "in the light most favorable to plaintiff, drawing all inferences and resolving all factual disputes in his favor, and assuming plaintiff's credibility." Sonoco Prods. Co. v. ACE INA Ins., 877 F. Supp. 2d 398, 404-05 (D.S.C. 2012) (internal quotations omitted); Carefirst of Maryland, Inc. v. Carefirst Pregnancy Ctrs., Inc., 334 F.3d 390, 396 (4th Cir. 2003) ("In deciding whether the plaintiff has made the requisite showing, the court must take all disputed facts and reasonable inferences in favor of the plaintiff."). A court considering the issue of personal jurisdiction "need not credit conclusory allegations or draw farfetched inferences." Sonoco, 877 F. Supp. 2d at 205 (internal quotation marks omitted).

A bedrock requirement in any civil action is that the district court in which a complaint is brought must have personal jurisdiction over the defendants. Before addressing the traditional requirements for personal jurisdiction, Plaintiff first argues that this court can assert personal jurisdiction over PennyMac because RICO provides for nationwide jurisdiction. The RICO statute authorizes service of process "in any judicial district in which [the defendant] ... is found." 18 U.S.C.

§ 1965(d). In ESAB Grp., Inc. v. Centricut, Inc., 126 F.3d 617, 626–27 (4th Cir. 1997) , the Fourth Circuit ruled that § 1965(d) allows a plaintiff to establish personal jurisdiction over a defendant by effectuating service over the defendant in any district in which the defendant resides.  However, as PennyMac argues, "[a] defendant may challenge a plaintiff's reliance on the nationwide service of process provision in a RICO case by demonstrating that the RICO claim is not colorable, because it is wholly immaterial or insubstantial." Noble Sec., Inc. v. MIZ Eng'g, Ltd., 611 F.Supp.2d 513, 549 (E.D. Va. 2009) (quoting ESAB Grp., Inc., 126 F.3d at 629). A RICO claim is not colorable if it is "implausible, insubstantial, or frivolous." D'Addario v. Geller, 264 F.Supp.2d 367, 388 (E.D. Va. 2003).   A RICO claim is colorable "if it is arguable and nonfrivolous, whether or not it would succeed on the merits."  Sadighi v. Daghighfekr, 36 F.Supp.2d 267, 271 (D.S.C.1999) (internal quotation marks and citations omitted). Defeating a plaintiff's use of RICO's nationwide service of process provision by demonstrating that the claim is not colorable is a "high burden."  Id. "[W]hether a RICO claim is colorable enough for a court to exercise personal jurisdiction and whether that same RICO claim is sufficient to state a claim under Rule 12(b)(6) are different questions." Nunes v. Fusion GPS, 531 F. Supp. 3d 993, 1004 (E.D. Va. 2021); see Combs, 886 F.2d at 674 (reversing district court judgment that "intermixed these two bases of challenge"); D'Addario, 264 F. Supp. 2d at 388-89 (RICO claim was "at least arguable and nonfrivolous, even if plaintiff ultimately may not prevail on the merits");  Navient Sols., LLC v. L. Offs. of Jeffrey Lohman, No. 1:19-cv-461, 2020 WL 1867939, at * 3 (E.D. Va. 2020) (separating the two inquiries); In re Takata Airbag Prod. Liab. Litig., 396 F. Supp. 3d 1101, 1144 (S.D. Fla. 2019) ("determining whether the [ ] RICO claims are "colorable"—or "not wholly immaterial or insubstantial"—is a separate and distinct question from whether the RICO claims are plausibly alleged"); see also Davis v.

Featherstone, 97 F.3d 734, 737–38 (4th Cir. 1996) (holding, for purposes of personal jurisdiction, that ERISA claim "is colorable if it is arguable and nonfrivolous, whether or not it would succeed on the merits").  PennyMac's arguments that Plaintiff's RICO claim is not colorable are all based upon the Forsyth County Superior Court's Order granting the Rule 12(b)(6) motion as to the RICO claim in that action.  This is insufficient to show that the claim not colorable.  Based upon the allegations in this case, Plaintiff's RICO claim is "at least arguable and nonfrivolous," D'Addario, 264 F. Supp. 2d at 388-89, even if Plaintiff may not ultimately prevail.  Therefore, personal jurisdiction over PennyMac in this Court is proper pursuant to 18 U.S.C. § 1965(d) and ESAB Grp.

>   **B.     Abstention**

PennyMac next argues that this court should abstain from adjudicating this case because there are pending state-level proceedings that involve the same subject matter. As set forth above, PennyMac commenced an action in Forsyth County in January of 2020 to reform Plaintiff's Deed of Trust to include Lots 13, 15, 16, 17, and 18. Complaint ¶ 44.  Plaintiff filed a counterclaim/third party claim and then a first amended counterclaim/third-party claim against PennyMac, SGIC, and Assurant, asserting violations of the RICO, in particular 18 U.S.C. § 1962(c) & (d), against all defendants, as well as claims for breach of contract and violation of the FDCPA against PennyMac. In May of 2021, the Forsyth County Superior Court entered an order dismissing all of Plaintiff's counterclaims/third-party claims.  As of the filing of Defendants' motions, the deed reformation action was still pending.

The Fourth Circuit has not decided whether a court entertaining an abstention argument should apply a Rule 12(b)(1) or 12(b)(6) standard. See Williams v. Ests. LLC, No. 1:19-CV-1076, 2020 WL 887997, at *8 n.6 (M.D.N.C. Feb. 24, 2020). District courts have allowed abstention

challenges to be raised under both a Rule 12(b)(1) and Rule 12(b)(6) motion. See id. (collecting cases). Though Rule 12(b)(6) seems to be the most appropriate vehicle for abstention arguments given that such doctrines presuppose that federal court jurisdiction exists (rather than a lack of subject matter jurisdiction as challenged by Rule 12(b)(1)), but when certain elements are met the court should abstain from exercising it, the outcome here would be the same under either subsection. See id. (noting the outcome would be the same under Rule either Rule 12(b)(1) or Rule 12(b)(6)).

As the Fourth Circuit has observed: "The Supreme Court has admonished the federal courts to respect the efforts of state governments to ensure uniform treatment of essentially local problems. Principles of federalism and comity require no less. Basic abstention doctrine requires federal courts to avoid interference with a state's administration of its own affairs." Johnson v. Collins Entm't Co., 199 F.3d 710, 719 (4th Cir. 1999) (internal citations omitted).

Under Colorado River Conservation District v. United States, 424 U.S. 800 (1976), a district court may abstain from exercising jurisdiction over an action otherwise properly before it "due to the presence of a concurrent state proceeding" for "reasons of wise judicial administration, giving regard to conservation of judicial resources and comprehensive disposition of litigation." Id. at 817 (quoting Kerotest Mfg. Co. v. C-O-Two Fire Equip. Co., 342 U.S. 180, 182 (1952)). While wise judicial policy and extraordinary circumstances may justify abstention, courts must remain cognizant that "[a]bstention from the exercise of federal jurisdiction is the exception [under Colorado River], not the rule." Id. at 814. As the Supreme Court noted, circumstances warranting abstention under the Colorado River standard, "though exceptional, do nevertheless exist." Id. at 818.

Two conditions must be present for a court to decline jurisdiction pursuant to Colorado River. First, "there must be parallel proceedings in state and federal court." Gannett Co. v. Clark Const. Grp., Inc., 286 F.3d 737, 741 (4th Cir. 2002). "Suits are parallel if substantially the same

parties litigate substantially the same issues in different forums." New Beckley Min. Corp. v. Int'l Union, United Mine Workers of Am., 946 F.2d 1072, 1073 (4th Cir. 1991).[1] And second, "'exceptional circumstances' warranting abstention must exist." Gannett, 286 F.3d at 741. Courts in the Fourth Circuit employ the following factors to guide their analysis:

> (1) whether the subject matter of the litigation involves property where the first court may assume in rem jurisdiction to the exclusion of others; (2) whether the federal forum is an inconvenient one; (3) the desirability of avoiding piecemeal litigation; (4) the relevant order in which the courts obtained jurisdiction and the progress achieved in each action; (5) whether state law or federal law provides the rule of decision on the merits; and (6) the adequacy of the state proceeding to protect the parties' rights.

Chase Brexton Health Servs., Inc. v. Maryland, 411 F.3d 457, 463–64 (4th Cir. 2005).

This suit and the Forsyth County case are parallel proceedings because they involve the same parties and the same claims. See footnote 1. Thus, the court must next consider the factors relevant in determining whether exceptional circumstances exist. First, the Forsyth County court has taken jurisdiction over real property and will decide whether to reform the Deed of Trust encumbering Johnson's property. Next, this forum is at least less convenient as compared to the Forsyth County court given that the property at issue is located in Oak Island, North Carolina rather than South Carolina. At least one of the Defendants, PennyMac, has no offices within the state of South Carolina. Further, neither Plaintiff's wife, who lives at the Oak Island, North Carolina property at

---

[1] In his Response, Plaintiff briefly mentions that "[f]or the purposes of a Colorado River analysis 'in a class action, the classes, and not the class representatives, are compared.'" Pl. Resp. p. 21. Plaintiff has not filed the present action as a class action, nor could he. See Myers v. Loudoun County Public Schools, 418 F.3d 395, 400 (4th Cir. 2005) ("An individual unquestionably has the right to litigate his own claims in federal court.... The right to litigate for oneself, however, does not create a coordinate right to litigate for others"); Oxendine v. Williams, 509 F.2d 1405, 1407 (4th Cir. 1975) (holding that a pro se litigant cannot bring a class action lawsuit).

issue, nor any other Oak Island resident could be compelled to attend the trial of this matter because Oak Island is more than 100 miles from this court in Florence, South Carolina. See Fed.R.Civ.P. 45(c).

The Supreme Court has stated that the third factor, the desirability of avoiding piecemeal litigation, was "[b]y far the most important factor" in deciding Colorado River. Moses H. Cone, 460 U.S. at 16. "Piecemeal litigation occurs when different tribunals consider the same issue, thereby duplicating efforts and possibly reaching different results." Gannett, 286 F.3d at 744 (quoting Am. Int'l Underwriters (Philippines), Inc. v. Cont'l Ins. Co., 843 F.2d 1253, 1258 (9th Cir. 1988)). This factor weighs heavily in favor of abstention. As discussed above, all of the claims raised by Plaintiff in this action have already been decided by the Forsyth County court. The only reason the claims in this action are not (yet) barred by res judicata is because the deed reformation portion of the Forsyth Count case is still pending and, thus, the order dismissing the claims is not a "final judgment" for res judicata purposes.[2] Thus, this court would be duplicating the efforts already taken by the Forsyth County court if it were to address the same claims already addressed by that court.

For the same reasons, the fourth factor also weighs heavily in favor of abstention. Courts

---

[2] All of the requirements for res judicata to apply are present except for the finality requirement. See Du Phan v. Clinard Oil Co., 798 S.E.2d 812 (N.C. Ct. App. 2017) (setting forth the elements necessary to apply res judicata). Although the Forsyth County order dismissing Plaintiff's counterclaims/third-party claims is on the merits and with prejudice, it is not a final judgment for res judicata purposes because the deed reformation portion of the Forsyth Count case is still pending. See, e.g., State v. Smith, 221 N.C. App. 246, 2012 WL 1995291, *3 (Ct. App. 2012) (finding that an order granting partial summary judgment did not become a final judgment on the merits for res judicata purposes until all of the remaining claims in the case were voluntarily dismissed); Green v. Dixon, 528 S.E.2d 51, 55 (N.C. Ct. App. 2000), aff'd 535 S.E.2d 356 (N.C. 2000) (per curiam) (holding that an order granting summary judgment in favor of third-party defendants was a final judgment for res judicata purposes because the other claims in the case had been voluntarily dismissed).

must consider "the relevant order in which the courts obtained jurisdiction and the progress achieved in each action." Chase Brexton, 411 F.3d at 464. The procedural history of the Forsyth County case is as follows: PennyMac originally filed the action on January 23, 2020. On February 21, 2020, Plaintiff filed his counterclaim/third party claim and removed the action to the United States District Court for the Middle District of North Carolina. On April 6, 2020, he filed his first amended counterclaim. On March 8, 2021, the Middle District of North Carolina remanded the action back to state court. On April 1, 2021, and April 5, 2021, Defendants filed their motions to dismiss. On April 8, 2021, Plaintiff filed a motion to amend. On May 24, 2021, the Forsyth County Court entered an Order dismissing Plaintiff's counterclaims and denying his motion to amend. Forsyth County Order (ECF No. 30-1). Plaintiff filed the present case in this court on March 19, 2021, a little less than two weeks after the Middle District of North Carolina remanded the Forsyth County case back to state court.[3] Further, as discussed above, the Forsyth County case has already progressed to the point where the court has issued a ruling dismissing Plaintiff's claims. Considerations with respect to this factor include which case was filed first and which case has progressed the most. See Moses H. Cone, 460 U.S. at 21 ("[P]riority should not be measured exclusively by which complaint was filed first, but rather in terms of how much progress has been made in the two actions."). Clearly, the Forsyth County case was filed first and had made significantly more progress in that it has already ruled on the issues currently before this court.

Next, though the law applicable to this case is federal rather than state, this fifth factor lends

---

[3] The Supreme Court has also instructed courts to consider the extent to which either action was initiated as a "defensive tactical maneuver." Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp., 460 U.S. 1, 17 n.20 (1983); see also McLaughlin v. United Virginia Bank, 955 F.2d 930, 935 (4th Cir. 1992) (instructing courts to consider "whether either the state or the federal suit was a contrived, defensive reaction to the other.").

little weight to the consideration where, as here, the state court has already issued a ruling and was fully capable of doing so. Further, as to the sixth factor, there is no indication that the Forsyth County court is incapable of providing Plaintiff with adequate protection of his rights and a just adjudication of his claims.

As stated above, "circumstances warranting abstention under the Colorado River standard, "though exceptional, do nevertheless exist." Id. at 818. This case is a prime example of when such abstention is appropriate. The claims raised in this action have already been considered and dismissed in the Forsyth County case. But for the fact that other claims, not at issue here, are still pending in the Forsyth County case, the present action would be barred by res judicata. It would be a clear waste of judicial resources to address those claims again in this action. Further, the undersigned perceives no reason why the outcome here would be any different than the outcome Plaintiff has already received. Therefore, this court should abstain from exercising jurisdiction over this case.[4]

Though some courts dismiss an action when it determines that abstention is appropriate, see, e.g., Guerrero, v. Union County, et al, No. 3:21-CV-00470-MR, 2021 WL 5760859, at *1 (W.D.N.C. Dec. 3, 2021), a stay, rather than dismissal as sought by Defendants, is appropriate. In Quackenbush v. Allstate Insurance Co., 517 U.S. 706 (1996), the Supreme Court clarified that a federal court can stay an action for damages based on abstention principles but cannot dismiss or remand the action. Id. at 730 (internal quotation marks and citation omitted). As previously recognized by this court, "[t]he Fourth Circuit has strictly adhered to Quackenbush, consistently ruled that a district court

---

[4]PennyMac also argues that abstention is appropriate under Younger v. Harris, 401 U.S. 37, 43–44 (1971). However, it is not necessary to address that argument given the application of Colorado River abstention.

applying abstention principles can only stay—not dismiss or remand—an action for monetary damages, and found reversible error where a district court dismissed or remanded actions or claims for damages." Ashley v. Rushmore Loan Mgmt. Servs., LLC, No. 4:16-CV-01969-RBH, 2017 WL 1135294, at *3 (D.S.C. Mar. 27, 2017) (collecting cases). Plaintiff seeks monetary damages in this action. Therefore, a stay of this action is appropriate pending the resolution of the Forsyth County action.[5]

## IV. CONCLUSION

For the reasons discussed above, it is recommended that Defendant PennyMac's Motion to Dimiss (ECF No. 14) be granted only to the extent that it is recommended that this Court abstain from exercising jurisdiction over this action under the Colorado River doctrine and stay the case pending a resolution of the Forsyth County action. It is further recommended that Defendants SGIC and Assurant's Motion to Dismiss (ECF No. 23) be denied as premature.

                                                             s/Thomas E. Rogers, III
                                                              Thomas E. Rogers, III
                                                              United States Magistrate Judge

January 19, 2022
Florence, South Carolina

**The parties are directed to the important information on the following page.**

---

[5]Defendants SGIC and Assurant argue that Plaintiff's claims in this action are barred by res judicata because the Forsyth County Superior Court has issued an order dismissing all of Plaintiff's counterclaims/third-party claims in that action, which are the same claims against the same parties as the present case. As set forth above in footnote 2, all of the requirements for res judicata to apply are present except for the finality requirement. Therefore, SGIC and Assurant's motion is premature and should be denied as such.